**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Raymond E. SMITH, Jr.,
Defendant–Appellant.**

No. 93–2491.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1994.

Decided July 29, 1994.

Barry R. Elden, Asst. U.S. Atty., Haywood McDuffie (argued), Eddie A. Stephens, Chicago, IL, for plaintiff-appellee.

Christopher W. Graul, Vickie Voukidis Blum, Stanley L. Hill (argued), Jennifer Lee, Hill & Associates, Chicago, IL, for defendant-appellant.

Before BAUER, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Raymond E. Smith, Jr. was charged in a three count indictment with distribution of cocaine. His case was tried in Chicago, with a visiting judge from the district of North Dakota presiding.

At the beginning of the third day of trial, a conference was held in the judge's chambers. Smith, his counsel, and the Assistant United States Attorney were all present. During this conference, the judge informed the parties of a private meeting he had with the jury. As recounted by the judge, a court security officer had informed him earlier that morning that the jury wanted to speak with him. The judge, accompanied by a clerk, responded to the request by going into the jury room to meet with the jurors. The judge stated that a member of the jury then told him that the jurors were "disturbed that I distributed to you the identification of the jurors, including the place of their residence."[1] In response the judge told the jury that, coming from where he does (Bismarck, North Dakota), "that sort of problem would never enter my mind." He then informed the jury that, in light of their concern, he would take back the outline sheet, redraft it without indicating the residence of the jurors, and redistribute it. Following the judge's description of what had occurred, Smith's counsel objected to the procedure employed and proposed by the court.

The judge later went back into the jury room, returned the original outline sheets and told the jurors to destroy them. He then instructed the jury that there was no reason for them to be fearful.

The jury found Smith guilty of all three counts of the indictment and he was sentenced to eighty-three months imprisonment on each count, the sentences to run concurrently. Smith now appeals, raising two issues for our review. We limit our discussion to the first of those two issues—whether the procedures used to allay the jury's concerns

---

1. An "outline sheet" was distributed by the court to each juror and to counsel. The outline sheet listed each juror's name and the community in which each juror resided.

over distribution of the outline sheet constitute reversible error.

## Discussion

In addressing the jury's concern about distribution of the outline sheet, the trial judge engaged in private communications with them in the jury room. These communications (the first without prior notice to counsel) occurred during the course of the trial and before the commencement of the jury's deliberations.

Judges routinely tell jurors (as was done in this case) that the court's response to jury inquiries will be given "either in writing or orally in open court." However, (again as in this case) that information typically is imparted to the jury just prior to jury deliberations through the court's final instructions. The timing of this jury instruction, and the fact that predeliberation contacts between the court and jurors often concern strictly "housekeeping" matters, may sometimes lead even highly experienced judges to assume that a private meeting with jurors prior to deliberations will not create problems either under Fed.R.Crim.Pro. 43(a) or the Constitution. This assumption may be reinforced by the fact that most cases which address problems concerning a judge's private discussion with jurors focus on such activity after jury deliberations have begun. Yet, the unusual practice of a judge entering the jury room to speak privately with jurors is almost certain to run afoul of a defendant's right to be present during trial proceedings.

■ It is well-settled that once the jury has begun to deliberate, counsel must be given an opportunity to be heard before the trial judge responds to any juror inquiry. *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *United States v. Widgery,* 778 F.2d 325 (7th Cir.1985). This rule is grounded in Fed.R.Crim.Pro. 43(a)'s requirement that a criminal defendant be present "at every stage of the trial," the Sixth Amendment's Confrontation Clause, and the Due Process Clause of the Four-

teenth Amendment. Thus, unless waived,[2] discussions concerning the jury inquiry and the court's response must take place on the record in the presence of the defendant. *Id.,* at 327.

■ The procedure to be followed is no different in cases, like this one, where a juror asks a question or requests to speak with the judge before deliberations have begun. *See United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam) (assuming, without deciding, that *ex parte* communications between the trial judge and a juror, occurring before jury deliberations had begun, violated Fed.R.Crim. Pro. 43(a)); *United States v. Arriagada,* 451 F.2d 487, 488 (4th Cir.1971), *cert. denied,* 405 U.S. 1018, 92 S.Ct. 1300, 31 L.Ed.2d 481 (1972):

> Rule 43, Federal Rules of Criminal Procedure, requires the presence of the defendant at "every stage of the trial." Such rule, manifestly proscribing any communications by the Court with the jury, *whether before or after it has begun its deliberations,* without the presence of the defendant, has properly been described as "a salutary provision" which should be scrupulously observed by trial judges.

(emphasis added). Private contacts between a judge and jury which occur before the commencement of deliberations are no less of a problem than those occurring after deliberations have started. Such contacts are "pregnant with possibilities for error." *United States v. United States Gypsum Co.,* 438 U.S. 422, 460, 98 S.Ct. 2864, 2885, 57 L.Ed.2d 854 (1978).

■ Having discussed the general undesirability of private contacts between the judge and the jury, we turn to the issue of whether such contacts in this case violated either the Constitution or Fed.R.Crim.Pro. 43(a). "[W]hether a defendant has a right to be present at a particular stage of his or her trial is a legal issue subject to *de novo* review." *United States v. Santiago,* 977 F.2d

---

**2.** Common practice, of course, is for the court and counsel to discuss jury questions in a preliminary fashion to determine what approach should be taken in making a response. With agreement of counsel, responses are often made in writing rather than requiring the jury to return into open court for an oral response by the judge.

517, 521 (10th Cir.1992) (citing *Lawson v. Tansy,* 911 F.2d 392, 394 (10th Cir.1990)).

The Supreme Court has made it clear that " '[t]he defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.' " *Gagnon,* 470 U.S. at 526, 105 S.Ct. at 1484 (quoting *Rushen v. Spain,* 464 U.S. 114, 125–126, 104 S.Ct. 453, 459, 78 L.Ed.2d 267 (1983) (Stevens, J., concurring in the judgment)). The Court has made it equally clear, however, that a defendant has a right, guaranteed by the Due Process Clause, to be "present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.' " *Id.* 470 U.S. at 526–527, 105 S.Ct. at 1484 (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105–106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)).

Because neither Smith nor his counsel were present when the judge initially met with the jury, Smith perhaps may have been denied his Due Process rights. The subject of that private meeting was a serious one— possibly affecting the fullness of Smith's "opportunity to defend against the charge[s]" against him. *Id.* The jury expressed concern over the fact that the location of their residences had been made available to Smith's counsel. The expression of concern about the disclosure of where they live might reasonably indicate that the jurors had already concluded, by the third day of trial, that Smith was guilty and posed a potential danger to them. Given this possibility, the defendant had a right to be present when the judge communicated with the jury to ensure that the court's actions would not be interpreted as a confirmation of the jury's bias.

Moreover, the error of the first private meeting with the jury was compounded when the judge went back into the jury room for a second private meeting with them. During the conference held in chambers, the judge indicated that he planned further discussions with the jury concerning the removal of the outline sheet:

> But there is—there are two points I wish to make. One is that the disclosure on the pattern sheet already existed. That information was already available to you. You had it beforehand. And I *intend* to point that out to the jury.... And I advise you, in fairness, that given the fact that I think I can by one or two remarks alleviate a little bit, at least their concern, and by the act of obedience to their request reassure them, and by the fact that the information is already public knowledge, and by the instructions that I *intend* to give them, that this defendant need not fear that any emotional concern the jurors have will work to his disadvantage. (emphasis added).

The trial resumed but no mention was made of the removal of the outline sheet. Immediately after the jury was dismissed for the day, further proceedings were held in open court. The removal of the outline sheet was discussed and the following colloquy took place between the court and Smith's counsel:

> MR. HILL: May I just have one more inquiry. With respect to the question this morning that was asked by the juror, was that in writing or was that a verbal—
>
> THE COURT: What question?
>
> MR. HILL: The one involving the fact that you had circulated the towns, the home towns of each—
>
> THE COURT: That was an oral—simply an oral—I might as well tell you about that, too. Having retrieved those two original instruments, I—my secretary voluntarily, because I didn't need to ask her—set those little forms up again with only the names. But I elected not to distribute them. I have them. I simply returned the two originals to the jury and told them to destroy it so they would know and they were satisfied. I didn't want any unnecessary fears about it.
>
> MR. HILL: Judge, I think you did instruct them that there was no reason for them to be fearful.[3]

---

**3.** We do not believe that Mr. Hill's statement indicates that he was present during the second meeting between the judge and the jury. Rather, it appears that Hill was simply trying to confirm that the jury received the instruction that the

THE COURT: Yes, I did.

MR. HILL: Or something along that line.

The second private meeting between the judge and jury presents an additional problem. During that meeting, the judge gave a private jury instruction. That instruction was a further deprivation of Smith's right to be present at all stages of his trial. *See Rushen v. Spain,* 464 U.S. 114, 120 n. 4, 104 S.Ct. 453, 456 n. 4, 78 L.Ed.2d 267 (1983) (per curiam) ("undisclosed instructions from judge to jury violate nonconstitutionally based rules of orderly trial procedure") (citing *Shields v. United States,* 273 U.S. 583, 588–589, 47 S.Ct. 478, 479, 71 L.Ed. 787 (1927)). Because neither Smith nor his counsel were present at the this second meeting, Smith had no opportunity to correct any possible errors in the district court's oral instruction. *See United States v. de Hernandez,* 745 F.2d 1305, 1308 (10th Cir.1984) ("The trial court's instruction, delivered *ex parte,* deprived the defendants of any opportunity of clarifying the ambiguity created by the supplemental instruction."); *United States v. Cowan,* 819 F.2d 89, 93 (5th Cir. 1987) ("[T]he exclusion of counsel denied the defendant the opportunity to correct any mistaken impressions the jurors might have taken from the *ex parte* conversations. The exclusion of counsel denied the defendant the opportunity to object to the district court's supplemental instruction."). Moreover, because there was no court reporter present to record the instruction given, we have no way to review its adequacy.

It is unnecessary for us to decide, however, whether the contacts between the trial judge and the jury rise to the level of constitutional violations, because Fed.R.Crim.Pro. 43(a) "provides a broader right to be present than the right recognized under the Constitution." *Young v. Herring,* 938 F.2d 543, 557 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1485, 117 L.Ed.2d 627 (1992) (citations omitted); *United States v. Brown,* 571 F.2d 980, 986 (6th Cir.1978) ("Although Rule 43(a) does have its constitutional underpinning, the right of presence stated in the Rule is more far-reaching than the right of presence protected by the Constitution.") (footnote omit-

ted). Rule 43(a) requires a defendant to be present "at every stage of the trial." Thus, Smith's rights under Rule 43(a) were violated when the judge communicated privately with the jury concerning disclosure of the jurors' residence locations.

*Harmless Error*

It is well-established that violations of Rule 43(a) may be harmless error. *Rogers,* 422 U.S. at 40, 95 S.Ct. at 2095; *United States v. Burns,* 683 F.2d 1056, 1059 (7th Cir.1982) (per curiam), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 821, 74 L.Ed.2d 1018 (1983). Nonetheless, a violation of Rule 43(a) requires reversal of a defendant's conviction unless the "record completely negatives any reasonable possibility of prejudice arising from such error." *Santiago,* 977 F.2d at 523 (quoting *United States v. Jorgenson,* 451 F.2d 516, 520–21 (10th Cir.1971)); *Arriagada,* 451 F.2d at 488 ("Any departure from the rule [Rule 43] is error and, 'unless the record completely negatives any reasonable possibility of prejudice arising from such error,' mandates a new trial.") (citation omitted).

As we indicated previously, the subject matter of the private communications between the judge and the jury did not deal merely with housekeeping matters but rather touched on a fundamental issue—whether the jury had concluded before the submission of all the evidence that the defendant was guilty. Given this possibility, removal of the outline sheet could have been interpreted by the jury as confirmation that they had reason to fear the defendant. Perhaps a proper instruction would have cured any possible misunderstanding the jury might have had concerning the removal of the outline sheet. However, we do not know how the verbal instruction to the jury was worded. Given the fundamental issue at stake and the fact that neither the judge's communications with the jury nor his private jury instructions are available for review, we cannot say that the record "completely negatives any possibility of prejudice" to Smith. *Cf. Burns,* 683 F.2d at 1059 ("[C]onsidering the extended nature of the discussion between the court and the jury, we are unable to say that the defendant

judge indicated in his chambers that he intended    to give.

**474**

was not prejudiced by the error of the court.").

## Conclusion

For all of the foregoing reasons, the defendant's conviction is REVERSED and this case is REMANDED to the district court for a new trial.