UNITED STATES of America, Plaintiff–Appellee,

v.

Dewayne PRESSLEY, Defendant–Appellant.

No. 94–3759.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1996.

Decided Nov. 8, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 8, 1997.

Barry Rand Elden, Chief of Appeals, Brian Havey (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Robert A. Handelsman (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and WOOD, Jr. and ESCHBACH, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The government tried Defendant–Appellant Dewayne Pressley ("Pressley") for attempted armed robbery. At the start of the second day of jury deliberations, the presiding judge had an ex parte conversation with one juror about whether hung juries often divide along racial lines. The judge reiterated the substance of this conversation during a hearing at which defense counsel and attorneys for the government were present. Neither party objected to the conversation at this time. The jury later returned a guilty verdict against Pressley. Pressley now appeals, contending that the judge's ex parte conversation with one juror might have affected the jury's verdict. Because the record demonstrates that neither Pressley's counsel's presence nor Pressley's presence either before or during the judge's conversation with the juror would have affected the verdict, we affirm.

## I. BACKGROUND

The government indicted and tried Pressley, an African–American male, for attempted armed robbery in connection with a failed attempt to rob a Maywood branch of the First Federal Savings Bank of Proviso Township. On the morning of the second day of jury deliberations, the judge held an on-the-record conference in-chambers to advise the parties that one of the jurors had initiated a conversation with him outside of the presence of the other jurors, Pressley and the attorneys. Counsel for both parties attended the in-chambers conference.

During this conference, the judge recounted his conversation with the juror. He stated that earlier that morning a United States Marshall informed him that a juror wished to speak with him. The marshall then escorted the juror into the judge's chambers. According to the judge, the juror told him that previously she had served on a jury which "was hung along racial lines" and that "she had the sense or the impression that the possibility of jurors lining up along racial lines existed in the present case."[1] She then asked the judge whether such racial division is common. The judge responded that "[t]hat [juries] sometimes divide along racial lines, that's likewise true, unfortunately." The judge also asked her whether the jurors were deliberating and whether she was participating in the deliberations. After she responded to both questions, the judge instructed her to return to the jury room and continue deliberating.

After recounting the conversation on the record, the judge asked the parties to state their positions with respect to the judge's handling of the conversation. Neither party objected to the judge's handling of the conversation at that time, and both parties stated that they wanted the jury to continue deliberating without further instructions.

In the afternoon, the jury submitted a written request for transcripts from witnesses' testimony and requested that the judge visit them in the jury room. After the court denied these requests, the jury submitted another note stating "We cannot reach a unanimous verdict. Our conclusion is 10 guilty and 2 unsure. What should we do?" After hearing arguments on the matter, the court found that the jury was not yet deadlocked. The court re-convened the jury and re-read the *Silvern* instruction to the jury.

Later in the day, the jury sent another communique to the court stating that they were "getting nowhere" and asking the court to dismiss them for the day and let them reconvene in the morning. After hearing argument of counsel, the court granted this request.

1. The record does not reveal what race the juror was, and we do not wish to speculate on the

The jury re-convened the following morning and returned a guilty verdict against Pressley that afternoon. The court entered judgment on the verdict and sentenced Pressley to 120 months in prison and three years supervised release. Pressley appeals his conviction.

## II. DISCUSSION

Federal Rule of Criminal Procedure 43(a) entitles a defendant to be present at all stages of his trial. Fed.R.Crim.P. 43(a). Communication between the judge and the jury, or a single juror, is one of those stages. *Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094–95, 45 L.Ed.2d 1 (1975); *United States v. Silverstein*, 732 F.2d 1338, 1348 (7th Cir.1984). Failure to secure the defendant's presence during communications between the judge and the jury violates Rule 43(a) unless the judge answers the jury's question in open court after giving defense counsel a chance to object and the jury's question raises issues on which counsel is not likely to consult the defendant or for which the defendant would not be likely to have an answer that would sway the judge. *Rogers*, 422 U.S. at 39, 95 S.Ct. at 2094–95; *United States v. Patterson*, 23 F.3d 1239, 1255 (7th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994); *Silverstein*, 732 F.2d at 1348.

Here, the judge conferred with the juror privately in chambers, and the judge did not give Pressley's counsel an opportunity to object before he responded to the juror's inquiries. Therefore, the judge's ex parte conversation with the juror violated Pressley's rights under Rule 43.

However, error under Rule 43(a) may be harmless, not mandating reversal and a new trial. *Rogers*, 422 U.S. at 40, 95 S.Ct. at 2095; *Patterson*, 23 F.3d at 1255. Therefore, our inquiry is not complete. An error is harmless unless it affects "substantial rights." Fed.R.Crim.P. 52(a); *Patterson*, 23 F.3d at 1255. An error affects substantial

matter.

rights only if it affects the outcome of the case. *Patterson,* 23 F.3d at 1255. Accordingly, when a defendant's rights under Rule 43(a) are violated, the defendant is entitled to a new trial only if the violation is likely to have affected the jury's verdict. *United States v. Coffman,* 94 F.3d 330, 336 (7th Cir.1996); *Patterson,* 23 F.3d at 1255.

■ Relying on *United States v. Smith,* 31 F.3d 469, 473 (7th Cir.1994), Pressley contends that the judge's comments at issue in the instant case cannot constitute harmless error because the communications did not involve "housekeeping matters." Instead, Pressley maintains that because the judge's comments touched upon the manner, nature and quality of deliberations, they must have affected the verdict. However, *Smith* is distinguishable from the instant action for two reasons.

In *Smith,* we held that a violation of Rule 43(a) required reversal because the ex parte communications at issue touched upon a "fundamental issue" rather than "housekeeping matters" and because those communications were not available for review on the record. 31 F.3d at 473–74. In reaching this holding, we noted that the ex parte conversation touched upon whether the jury had concluded that the defendant was guilty before the parties had submitted all of the evidence. *Id.* at 472. Because the judge's comments could have confirmed the jury's fears that the defendant was guilty, we concluded that the judge's comments "possibly affect[ed] the fullness of [the defendant's] 'opportunity to defend against him.'" *Id.* (quoting *United States v. Gagnon,* 470 U.S. 522, 526–27, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (per curiam)). As such, we reasoned that the comments touched upon a fundamental issue. *Id.* at 473. Although the comments may not have been prejudicial, we held that the record did not negate any possibility of prejudice because the comments were not available on the record for review. *Id.* at 473–74. Therefore, we concluded that we could not find harmless error. *Id.* at 473.

In contrast, in the instant action, the judge's comments that juries often divide along racial lines and that the juror should continue deliberating did not touch upon Pressley's guilt or innocence. Furthermore, even if these comments had touched upon Pressley's guilt or innocence, they could not be interpreted as leaning in favor of the government. As such, the judge's comments did not affect the fullness of Pressley's opportunity to defend himself against the charges against him. Therefore, unlike the judge's response in *Smith,* the judge's comments here did not touch upon a fundamental issue. *See Gagnon,* 470 U.S. at 526–27, 105 S.Ct. at 1484–85 (judge's ex parte conversation with a juror concerning the defendant's practice of sketching the jury was a "minor occurrence" not implicating his Fifth Amendment right to be present during all stages of trial); *compare, Coffman,* 94 F.3d at 336 ("[A] bare instruction to keep deliberating [did] not warrant reversal" because it was "noncommittal" and "did not lean in favor of the prosecution.") *with United States v. Neff,* 10 F.3d 1321, 1326–27 (7th Cir.1993) (reversal required where the judge answered the jury's question with facts not in evidence).

Moreover, even if the judge's comments had touched upon a fundamental issue, the record here, unlike the record in *Smith,* affirmatively demonstrates that the judge's comments did not affect the jury's verdict. Although the judge's comments are not available on the record for review, other factors in the record indicate that the judge's comments were not prejudicial. Most notably, in *Smith,* defense counsel objected to the judge's communications with the jury after the judge revealed the substance of the communications at an in-chambers conference. *Smith,* 31 F.3d at 470. Here, on the other hand, Pressley's counsel did not object to the judge's handling of the matter when the judge presented him the opportunity to object at the in-chambers conference. In fact, Pressley's counsel stated that he thought the deliberations should proceed with no further instruction. Counsel's failure to object suggests that had the judge presented the matter to him before responding to the juror's question, Pressley's counsel would not have suggested an alternative response.[2] Indeed,

2. Pressley maintains that his counsel's failure to object is irrelevant to this appeal because we

Pressley's counsel did not provide an alternative response to the juror's question until this court requested him to provide one at oral argument on the instant appeal.

Defense counsel's failure to object to the response renders the instant action more analogous to the situation in *United States v. Rodriguez*, 67 F.3d 1312, 1316–17 (7th Cir. 1995), *cert. denied*, — U.S. ——, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996). In *Rodriguez*, we found a court's failure to consult counsel before responding to the jury's request "more troubling" than the court's failure to secure the defendant's presence while responding to other jury requests. Nonetheless, we held that this failure amounted to harmless error because nothing in the record supported an inference that counsel would have objected to the court's response had he been consulted. *Id.* at 1317. We were persuaded that defense counsel would not have objected to the court's response if given the opportunity because counsel had agreed to an identical response to a similar request earlier in the deliberations. Similarly here, when given an opportunity to object to the disputed response, Pressley's counsel implicitly agreed to the judge's response.

Moreover, the timing of and circumstances surrounding the jury's verdict negate any possibility that the judge's comments affected the jury's verdict. Pressley contends that the judge's comments might have confirmed the juror's fears that the jury's deliberations might result in a hung jury. Pressley reasons that by confirming the juror's fears of a hung jury, the judge's comments may have induced the juror to surrender her convictions in the interest of a unanimous verdict. However, as stated above, the jury deliberated for one and one-half days after the judge's comments before reaching its verdict. This length of time alone suggests that the judge's comments did not induce the juror to disregard her conscience. *Cf. Coffman*, 94 F.3d at 336 (noting that "the rapidity with which the jury responded by bringing in a verdict could

be thought evidence that it felt coerced by the judge's instruction"); *Neff*, 10 F.3d at 1327 (the judge's comments impermissibly influenced the jury's verdict where the jury rendered its verdict immediately after receiving the judge's comments). Furthermore, the jury did not indicate that it might be deadlocked until several hours after the judge's ex parte comments. The communique suggesting deadlock directly followed the court's refusal of its request for transcripts. The timing of it suggests that the court's refusal to provide the transcripts, rather than any racial animus, led to the possible deadlock. Accordingly, the timing of the verdict and the record of events between the ex parte conversation and the rendering of the verdict negate any possibility that the judge's comments affected the jury's verdict. Therefore, the judge's failure to consult Pressley's counsel before responding to the juror's request constituted harmless error.

Judges realize that this kind of contact with a juror is most sensitive and should be avoided. We do not know from the record what extenuating circumstances may have caused the judge to meet with the juror, but no harm was done.

## III.  CONCLUSION

For the reasons expressed above, we hold that because the judge's ex parte conversation did not affect the verdict, any error resulting from the judge's failure to secure Pressley's presence or consult with Pressley's counsel before communicating with the juror was harmless. Accordingly, Pressley's conviction is

AFFIRMED.

---

must review a violation of Rule 43(a) for harmless error even if defense counsel failed to raise the issue below. While Pressley correctly notes that the absence of an objection does not alter the standard of review, *Patterson*, 23 F.3d at 1255, we find that the absence of an objection

from defense counsel is relevant to our review because the absence of an objection supports an inference that the parties would not have pursued a different course had the judge presented the issue to them before conferring with the jury.