151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff/Appellee,
v.
Maurice TYLER, Defendant/Appellant.
 No. 98-1701.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 5, 1998.
Decided Aug. 10, 1998.
 
 Appeal from: United States District Court for the Southern District of Indiana, Indianapolis Division. No. IP 97-6-CR-01 M/F.
 Before Hon. WILLIAM J. BAUER, Hon. HARLINGTON WOOD, Jr., Hon. FRANK H. EASTERBROOK, Circuit Judges.
 ORDER
 MCKINNEY, Judge.
 
 
 1
 Maurice Tyler was convicted of being a felon in possession of a firearm. The case against him was strong, but during closing argument the prosecutor compared the gun Tyler was holding to a watermelon (the defendant is an African-American). Furthermore, during jury deliberations the trial judge resolved two jury questions off the record and outside the presence of the defendant, which the government concedes was error. The defendant argues that his conviction must therefore be reversed and his case remanded for retrial. We now affirm.
 
 I. FACTUAL BACKGROUND
 
 2
 Maurice Tyler was arrested in connection with a domestic disturbance that took place at his girlfriend's apartment late one evening in October 1996. He and his girlfriend, Annissa Abernathy, had gotten into a violent argument about his philandering. Tyler beat Annissa and her cries woke up her younger brother Thomas, who called the police. An officer arrived at the apartment shortly thereafter, while the defendant was leaving the apartment. As the responding officer ("R/O") approached, flashlight in hand, he observed that the suspect was cradling a number of objects in his hands and had a handgun tucked under his left armpit. Following a brief struggle, the R/O wrestled the gun from the suspect's possession. The suspect escaped, but he left behind the loose-fitting coat he had been wearing, an article of jewelry subsequently determined to have been given to Annissa by the defendant, and a number of photographs: some of Annissa and some of Tyler, two of which show him wearing the same coat recovered by police. Other police officers interviewed Thomas and Annissa and photographed the damaged apartment.
 
 
 3
 At trial, the government presented testimony from numerous witnesses, including the R/O, Annissa's brother Thomas, and her mother, Mrs. Abernathy. Annissa, however, testified on Tyler's behalf. She asserted that the gun was hers, that she had pulled the gun on Tyler during their dispute, that he wrested the gun from her and then beat her, after which he fled. Her version of events was contradicted by the government's witnesses, by police photographs, and by her own prior inconsistent statements. Thomas and Mrs. Abernathy further testified that Annissa and Tyler had urged them to recant statements they had made incriminating Tyler.
 
 
 4
 During initial closing argument, the prosecutor made the following statements:
 
 
 5
 [The R/O] sees the defendant walk out the side door of the residence and the officer walks up.... The obvious thing to do, if you are a good police officer, ... you identify yourself as a police officer, you use your light, you point it at his chest, as he testified, and not in his eyes. At his chest and see what is going on as you close up to the reactionary gap, that six foot distance. They said they walk to four to six feet. Well, you say, "hold it, I need to speak with you, police." I asked him that question, "Did you identify yourself as a police officer?" He said, "I did. I always do." And why not? Why not? If it wasn't even obvious, he is wearing a full uniform here; badge, the gun, the whole nine yards. He is obviously a police officer, and he identified himself as such.
 
 
 6
 What does the defendant do? He has got a gun under his arm, of course, not by any accident or mistake. It is a huge gun. That is not a watermelon, that is a gun. Anybody holding that thing knows it is a real gun. What he does is he wants to get away from the policeman. He moves.... He is trying to distract [the R/O] because he knows in his mind he has got a problem. He is a felon and he has got a gun under his arm....
 
 
 7
 (Trial Tr. at 340-41.) The defendant neither objected to the "watermelon" comment nor did he move for a mistrial.
 
 
 8
 During deliberations, the trial judge received two notes from the jury: they asked to see the R/O's flashlight, which had not been admitted into evidence, and they wanted a transcript of the R/O's testimony. The judge contacted the attorneys (it is unclear whether counsel were contacted individually or jointly by conference call), but the defendant was not contacted, was not present for the conference (or conferences), and did not confer with his attorney regarding the requests. The communications were not made on the record in open court, nor were the notes preserved. At two post-trial hearings, however, the trial judge recalled his unwillingness to provide a transcript or to send material to the jury that had not been admitted into evidence, "although I think both notes [to the jury] just say no or use the best ---use your recollection the best you can. So there was no positive answer to either one of their questions."
 
 
 9
 The jury convicted Tyler of being a felon in possession of a firearm. Because of his criminal history, the court sentenced him to 280 months imprisonment as an armed career criminal. See 18 U.S.C. §§ 922(g)(1), 924(e)(1). On appeal, the defendant contends that the court's handling of the jury's requests deprived him of his right to be present at every stage of his trial. He further argues that the prosecutor's "watermelon" remark was racially inflammatory and deprived him of a fair trial. On the basis of these errors, Tyler urges this court to vacate his conviction and remand his case for retrial.
 
 II. STANDARD OF REVIEW
 
 10
 Whether the defendant has a right to be present at a particular stage of his trial is a question of law, subject to de novo review. See United States v. Smith, 31 F.3d 469, 471-72 (7th Cir.1994). The district court's decision to allow material into the jury room, including trial transcripts, is reviewed for abuse of discretion. The trial court is likewise entrusted with broad discretion to address prejudicial influences on the jury. See United States v. Sanders, 962 F.2d 660, 671, 673-74 (7th Cir.1992).
 
 
 11
 A defendant's failure to timely assert his rights will result in their forfeiture. See United States v. Olano, 507 U.S. 725, 733-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Where a defendant has failed to object at trial, appellate review is permissive, not mandatory, and the defendant bears the burden to demonstrate that the error has prejudiced his substantial rights. Under Rule 52, an error is harmless unless it affects the defendant's substantial rights, that is, unless the error affected the outcome of the proceedings. See Fed.R.Crim.P. 52; Olano, 507 U.S. at 734-36.
 
 III. ANALYSIS
 
 12
 The defendant first contends that his right to be present at all stages of his trial, secured both by the Constitution and Rule 43 of the Federal Rules of Criminal Procedure, were violated when the trial court conducted an off-the-record conference, out of his presence, in response to the jury requests. See U.S. Const. amends. V-VI; Fed.R.Crim.P. 43(a); Rogers v. United States, 422 U.S. 35, 39, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). He argues that there was a direct causal relationship between his possession of a firearm and the avoidance of the threatened harm from Annissa, and that the transcript would have supported his version of events: after having wrestled the gun from Annissa in self-defense, he was blinded by the flashlight beam in the darkness outside her apartment moments later. He then reflexively fought with and fled from an unidentified assailant. Tyler suggests that the requests for a transcript of the R/O's testimony and his flashlight demonstrate the jury's uncertainty as to whether the defendant realized he was struggling with a police officer. Had he been present for the jury inquiries, he concludes, he would have urged the court to provide the transcript to the jury.
 
 
 13
 With little elaboration, the district court concluded that its handling of the jury requests did not violate the defendant's rights, either under the Constitution or Rule 43. This is incorrect, and the law on this point is well settled. "The defendant is entitled to be present at all stages of his trial, ... and a judge's response to a note from the jury is one of those stages." United States v. Coffman, 94 F.3d 330, 335-36 (7th Cir.1996) (citations omitted), cert. denied, 520 U.S. 1165, 117 S.Ct. 1425, 137 L.Ed.2d 535 (1997), and cert. denied, 520 U.S. 1165, 117 S.Ct. 1426, 137 L.Ed.2d 535 (1997); see also Smith, 31 F.3d at 472-74. Due process requires that the defendant be present at the proceedings "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 78 L.Ed. 674 (1934), and Rule 43 affords the defendant an even broader right to be present than that recognized by the Constitution. See Smith, 31 F.3d at 473. A failure to adhere to the Rule threatens a defendant's right and his ability to defend himself, generates needless litigation, and jeopardizes the integrity of the fact-finding process. Discussions between court and counsel regarding jury inquiries must take place on the record in open court, and the court's communication with the attorneys must be held jointly, not individually. While a defendant may waive his right to proper procedures or to be present during the proceeding, a purported waiver by counsel is not sufficient. Rather, the court must secure from the defendant, on the record, a knowing and unequivocal waiver of his rights. See United States v. Rodriguez, 67 F.3d 1312, 1316 (7th Cir.1995); see also 28 U.S .C. § 753(b); Rogers, 422 U.S. at 39; United States v. Patterson, 23 F.3d 1239, 1254-55 (7th Cir.1994); United States v. Neff, 10 F.3d 1321, 1323-25 (7th Cir.1993).
 
 
 14
 In this instance, however, the error was harmless beyond a reasonable doubt, since it would appear that nothing the defendant could have said, had he been present, would have altered the judge's responses. See Rodriguez, 67 F.3d at 1316; Patterson, 23 F.3d at 1255. At a post-trial hearing on the matter, the trial judge declared, "I have not sent a transcript of anybody's testimony to a jury in my entire life, I wouldn't have done it in that case, in any case." Given the court's categorical refusal to provide trial transcripts, there is no basis on which to conclude that the district court's mishandling of the jury inquiries affected the defendant's substantial rights. Similarly, because the R/O's flashlight had not been admitted into evidence, nothing the defendant might have suggested, had he been present at the conference, could (or should) have convinced the judge to send the flashlight to the jury. Finally, given the brevity of the trial and the fact that the jury was taking notes, there is no basis on which to conclude that the court abused its discretion in refusing to provide the transcript. See, e.g., United States v. Howard, 80 F.3d 1194, 1202 (7th Cir.1996); United States v. Adcox, 19 F.3d 290, 292-95 (7th Cir.1994).
 
 
 15
 Tyler's next argument fares little better than his first. He contends that the prosecutor's "watermelon" comment was a racial slur that so infected the jury's deliberations that he was denied due process. Because he raises this argument for the first time on appeal, he must demonstrate not only that the remark denied him a fair trial, but that without the comment the result of his trial would have been different. See Fed.R.Crim.P. 52; Olano, 507 U.S. at 734-35.
 
 
 16
 The defendant has not carried his burden. Whether or not this isolated comment, uttered "in the heat of argument," United States v. Young, 470 U.S. 1, 10, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), may properly be construed as a slur at all, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The parties agree that it was the only comment of its kind made during the entire proceeding. Moreover, the jury was instructed that the statements and arguments of counsel were not evidence; that closing arguments, for the purpose of discussing the evidence, should be disregarded to the extent they were unsupported by the evidence; and that they were to consider only the evidence in reaching their verdict. The defendant also declined to comment on the prosecutor's remark during his own closing argument. Finally, the weight of the evidence against the defendant was heavy, and Annissa's testimony in support of the defendant was thoroughly undermined. When all of these factors are considered, and when the comment is viewed in the context of the entire trial, it simply cannot be said that the remark was so prejudicial as to deprive Tyler of a fair trial. See, e.g., Darden v. Wainwright, 477 U.S. 168, 178-83, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); Young, 470 U.S. at 16; United States v. Owens, Nos. 97-3308 & 97-3509, slip op. at 8-9 (7th Cir. May 26, 1998); Smith v. Farley, 59 F.3d 659, 663-64 (7th Cir.1995). Neither can it be said that but for the comment the result of the trial would have been different. See Olano, 507 U.S. at 734-37.
 
 
 17
 The defendant asserts in passing that the district court was under an affirmative obligation to inquire whether the comment affected the jury's impartiality. As this court has observed, however, "In an ongoing proceeding, the proper method of challenging whether a jury is impartial and due process has been served is use of a motion for a mistrial." United States v. McClinton, 135 F.3d 1178, 1186 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 2308, 141 L.Ed.2d 167 (1998), and petition for cert. filed, (U.S. June 30, 1998) (No. 98-5078). In this instance, the defendant made no such motion, nor did he raise objection at trial. Moreover, the failure by the court to conduct a voir dire does not automatically constitute reversible error: the proper question is whether there is a substantial likelihood that the defendant was denied a fair trial. See Sanders, 962 F.2d at 672. Tyler has presented neither argument nor evidence to suggest that the jury could not remain impartial after hearing the prosecutor's remark. Based on the facts presented here, and because the trial judge is always better situated than an appellate court to assess the reactions and demeanor of the jury, the district court's failure to ascertain, sua sponte, the effects of the prosecutor's comment was not an abuse of discretion. See id. at 671-74. It most certainly does not rise to the level of plain error.
 
 
 18
 The decision of the district court is therefore AFFIRMED.