**UNITED STATES of America, Plaintiff,**

v.

**Adolph BRADLEY, Defendant.**

No. 98–30149.

United States District Court, S.D. Illinois, East St. Louis Division.

Aug. 28, 2000.

Hal Goldsmith, Fairview Heights, David S. Kris, Washington, DC, for plaintiff.

Lawrence J. Fleming, East St. Louis, MO, for defendant.

## OPINION

RICHARD MILLS, District Judge.

The right to a fair trial by a jury of one's peers is unquestionably one of the most precious and sacred safeguards enshrined in the Bill of Rights.

*Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 572, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)(Brennan, J., concurring).

## I. BACKGROUND

On December 17, 1998, a jury found Adolph Bradley guilty of willfully depriving a person of his constitutional rights under color of law in violation of 18 U.S.C. § 242. On March 26, 1999, United States District Judge Paul E. Riley granted Bradley's motion for a downward departure-finding that his conduct constituted a single act of aberrant behavior-and sentenced him to three years of probation.[1]

---

1. In addition to sentencing Bradley, Judge Riley presided over Bradley's trial. Judge Riley is no longer an active district judge due to a medical disability which renders him

On April 2, 1999, Bradley filed a timely notice of appeal of his conviction, and the Government appealed Judge Riley's grant of a downward departure in Bradley's sentence. On November 4, 1999, the United States Court of Appeals for the Seventh Circuit affirmed Bradley's conviction. *United States v. Bradley*, 196 F.3d 762, 772 (7th Cir.1999). However, the Seventh Circuit vacated Bradley's sentence and remanded this case because Judge Riley had not made adequate factual findings to support the downward departure. *Id.* at 771. On November 16, 1999, Bradley filed a petition for rehearing and suggestion for rehearing *en banc* with the Seventh Circuit.

While Bradley's petition for rehearing was pending before the Seventh Circuit, Bradley's counsel received notification from Chief United States District Judge J. Phil Gilbert that Judge Riley may have had *ex parte* communications with the jury during its deliberations in Bradley's case.[2] Based upon this information, Bradley filed a motion with the Seventh Circuit asking that court to remand his case to the district court so that he could investigate the nature and extent of these *ex parte* communications. On January 27, 2000, the Seventh Circuit denied Bradley's motion to remand, suggesting instead that he renew his claim in a motion filed pursuant to 28 U.S.C. § 2255.

On February 28, 2000, Bradley filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 with this Court.[3] On March 17, 2000, the Seventh Circuit remanded this case "for the limited purpose of conducting further proceedings relating to the allegation of ex parte communications between the trial judge and the jury." In addition, the Seventh Circuit's remand directed the district court "to make and certify to us, at the conclusion of these proceedings, its findings concerning the allegations made."

In his Rule 33 motion, Bradley argues that he is entitled to a new trial because Judge Riley had an *ex parte* communication with the jury when, after receiving a note from the jury, he entered the jury room, answered the jury's questions, and, at some later point, *sua sponte* provided the jury with extra copies of three jury instructions.[4] In addition, Bradley contends that Judge Riley may have had additional contact(s) with the jurors which would support his motion for a new trial. Bradley asserts that evidence in other cases reveals that Judge Riley had a habit of communicating with deliberating juries, and therefore, it is likely that he did so in this case. Accordingly, Bradley asks the Court to conduct an evidentiary hearing and, then, to allow his motion for a new trial.

The Government argues that an evidentiary hearing is unnecessary and that Bradley's motion for a new trial should be denied. The Government asserts that Judge Riley's communication with the jury regarding the three instructions does not constitute newly discovered evidence because Judge Riley conferred with and obtained the approval of counsel before answering the jury's questions regarding the instructions. Although the Government admits that it would have been more prudent for Judge Riley to have answered the jury's questions in writing rather than en-

---

unable to efficiently discharge the duties of his office.

2. Bradley's petition for rehearing is still pending before the Seventh Circuit.

3. Chief Judge Gilbert assigned the above-captioned case to this Court-along with six other criminal cases in which Judge Riley allegedly had *ex parte* communications with the juries-after all of the district judges in the United States District Court for the Southern District of Illinois recused themselves.

4. The jury's note read as follows: "Could you clarify Item 3 on page stating 'to sustain the charge.' Also last paragraph starting 'If the force used by the defendant was greater, etc. on page beginning 'One factor which you may, etc.' Also 'Instruction No._____.' " /s Jerry C. Turner Foreman.

tering the jury room to respond orally and in person, the Government claims that, because Judge Riley answered the jury's questions in the manner in which he, counsel, and Bradley had agreed, Bradley did not suffer any prejudice as a result of Judge Riley's actions.[5] Moreover, the Government claims that, to the extent that Judge Riley violated Bradley's right to be present under Federal Rule of Criminal Procedure 43(a), this error was harmless.

As for Bradley's claim that other improper contacts may have occurred (including his allegation that Judge Riley may have personally delivered extra copies of the jury instructions to the jury), the Government argues that Bradley has failed to carry his burden of establishing that such an *ex parte* communication occurred between Judge Riley and the jury. Because the jury's note regarding the three jury instructions does not constitute newly discovered evidence and because Bradley has failed to establish any other *ex parte* communication occurred between Judge Riley and the jury, the Government asks the Court to deny Bradley's motion for a new trial without conducting an evidentiary hearing.

## II. APPLICABLE LAW

Federal Rule of Criminal Procedure 33 provides that "the court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice." *Id.* "Probably the most frequent basis for a Rule 33 motion-and the only one specifically mentioned in the rule-is one 'based on the ground of newly discovered evidence.'" *United States v. Woolfolk*, 197 F.3d 900, 905 (7th Cir.1999), quoting *United States v. Kamel*, 965 F.2d 484, 490 (7th Cir.1992). The United States Court of Appeals for the Seventh Circuit has explained:

To receive a new trial based on newly discovered evidence, the defendant must

demonstrate that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *Woolfolk*, 197 F.3d at 905.

However, when the basis for a new trial is newly discovered evidence that the trial judge has had improper contact with a juror or jurors, the test is somewhat different because "[a]ny *ex parte* meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities of error." *United States v. United States Gypsum Co.*, 438 U.S. 422, 460, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). As the United States Supreme Court has opined:

In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954), citing *Mattox v. United States*, 146 U.S. 140, 150, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Moreover, the Seventh Circuit has stated that "the unusual practice of a judge entering the jury room to speak privately with jurors is almost certain to run afoul of a defendant's right to be present during trial proceedings."[6] *United States v. Smith*, 31 F.3d 469, 471 (7th Cir.1994).

---

**5.** Judge Riley's court reporter, Brenda Osborn, accompanied him into the jury room

and recorded the conversation which transpired.

**6.** A defendant's right under Federal Rule of

■ Before the Government is put to its burden of showing that an improper contact by an outsider with the jury is harmless, however, a defendant must first establish that an *ex parte* communication occurred. *See Owen v. Duckworth*, 727 F.2d 643, 646 (7th Cir.1984)(holding that the defendant bears the burden of proving outside contact with the jury); *see also United States v. Wilson*, 715 F.2d 1164, 1172 (7th Cir.1983)(holding that while "private communications between jurors and others are presumptively prejudicial[,][t]here can be no prejudice ... in the absence of any such communication."); *see also United States v. Heater*, 63 F.3d 311, 321 (4th Cir.1995)(holding that the defendant bears the initial burden of demonstrating that the improper juror contact occurred, and only if the contact is established must the Government demonstrate absence of prejudice). The moving defendant must meet this burden by a preponderance of the evidence. *United States v. Caro-Quintero*, 769 F.Supp. 1564, 1580 (C.D.Cal.1991); *see also United States v. Tarpley*, 945 F.2d 806, 811 (5th Cir.1991)(holding that the defendant must show that "improper communication of extrinsic information had likely occurred."); *see also United States v. Cousins*, 842 F.2d 1245, 1247 (11th Cir.1988)(holding that a defendant must make a "colorable showing" that an *ex parte* communication occurred).

Furthermore, "[a] determination of jury prejudice is complicated in the federal courts by the proscription against questioning jurors directly about the effect of the outside contact on their deliberations." *Owen*, 727 F.2d at 646. Federal Rule of Evidence 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

*Id.* Thus,

[r]ather than question the jurors directly, a district court must make findings of fact at two separate levels. First, the district court must find the basic, or subsidiary, facts—*e.g.,* the nature, content, and extent of the extra-judicial contact. Based on its findings of subsidiary facts, the district court must then make the ultimate factual determination: whether the contact likely affected the juror's impartiality.

*Owen*, 727 F.2d at 646.

### III. ANALYSIS

In the instant case, the Court finds that it is more likely than not that Judge Riley had an *ex parte* communication(s) with the jury during Bradley's trial. *Tarpley*, 945 F.2d at 811. The Court believes that it can make this finding without the necessity of conducting an evidentiary hearing as requested by Bradley.[7]

Criminal Procedure 43(a) to be present at every stage of his trial is "more far-reaching than the right of presence protected by the Constitution." *United States v. Brown*, 571 F.2d 980, 986 (6th Cir.1978).

7. Except for testimony regarding whether extraneous prejudicial information was improp-

erly brought to the jury's attention, the Court cannot allow, authorize, or compel a juror to testify regarding anything which occurred during the course of the jury's deliberations and/or to what effect anything had upon the juror's mind or emotions which might have influenced the jury's verdict. Fed.R.Evid. 606(b); *Owen*, 727 F.2d at 646.

■ The Government is correct that because Judge Riley consulted with counsel and Bradley before entering into the jury room to respond to the jury's questions, his error was harmless. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985); *United States v. Patterson*, 23 F.3d 1239, 1254 (7th Cir. 1994); *Verdin v. O'Leary*, 972 F.2d 1467, 1482 (7th Cir.1992); *United States v. Rodriguez*, 67 F.3d 1312, 1316 (7th Cir.1995).

However, during an interview by Chief Judge Gilbert, David Agay (Judge Riley's law clerk who was assigned to this case) informed Chief Judge Gilbert that, during his tenure as Judge Riley's law clerk, he assisted Judge Riley in only four trials: *United States v. Bradley*, 98–30149, *United States v. Bishawi*, 97–40044, *United States v. Alexander*, 99–30067, and *United States v. Hodges*, 99–40009. Of those four trials, Agay had a specific recollection that Judge Riley entered the jury room and spoke with the jury while they were deliberating in three of the four cases, although he could not specify in which of the three cases the improper contact had occurred.

While it is possible that Agay could be referring to Judge Riley's contact with the jury in this case when he answered the jury's questions in the presence of a court reporter, it is equally possible that Agay was recalling an additional contact between Judge Riley and the jury. In his affidavit, Agay testified that "[o]n some occasions, I was not present in chambers when the jury sent a note. Sometimes, Judge Riley would receive the note, read it, go into the jury room, and close the door." The Court believes that this testimony, in conjunction with Judge Riley's error in answering the jury's questions, is sufficient to find that Bradley has made a colorable showing that an *ex parte* communication occurred.[8] *Cousins*, 842 F.2d at 1247.

The Court is not persuaded by Court Security Officer Tony Pona's testimony that an *ex parte* communication did not occur in the above-captioned case. In his affidavit, CSO Pona testified that he "never saw Judge Riley himself deliver the answer to a jury note." In addition, CSO Pona testified that he "never saw or heard Judge Riley speaking to the jurors outside the courtroom about the substance of a case."

However, it is undisputed that Judge Riley frequently visited and communicated with deliberating juries in cases over which he presided.[9] Several court personnel attested to this fact in affidavits which have been filed with this Court.[10] In fact, it is clear that, contrary to CSO Pona's testimony, Judge Riley entered the jury room and delivered an answer to the jury's questions in this case as evidenced by the transcript of the exchange which occurred between Judge Riley and the jury while they were in the jury room during the

---

8. In addition, Agay testified that he "observed Judge Riley speaking to jurors outside the courtroom on several occasions." Although Agay went on to say that the discussions merely concerned mundane matters such as the weather, given Judge Riley's improprieties with juries in other cases, the Court is concerned that even these, perhaps, innocent contacts with the juries might have had an influence on the juries' partiality despite Agay's statement that he did not see or hear Judge Riley discuss the substance of any case during these contacts. At a minimum, given the circumstances surrounding these seven cases and Judge Riley's medical condition, it leaves one with the impression that "[s]omething is rotten in the state of Denmark." WILLIAM SHAKESPEARE, HAMLET, act I, sc. 4.

9. In fact, the Government has conceded that the defendants in *United States v. Quilling*, 99–30059, and *United States v. Von Briggs*, 99–30053, are entitled to a new trial based upon Judge Riley's *ex parte* communications with the juries.

10. In addition, CSO Pona's testimony that Judge Riley did not comment on the firearms and ammunition evidence when the jury was viewing it outside the presence of the defendant and counsel in *United States v. Davis*, 99–30023, is contradicted by Sheila Hunsicker (Judge Riley's permanent law clerk) who testified that Judge Riley did make comments to the jury on that evidence.

jury's deliberations. Thus, the Court does not believe that CSO Pona's testimony is sufficient to negate the Court's finding of a likelihood that Judge Riley engaged in an *ex parte* communication(s) with the jury in this case.

The Court is mindful of and even sympathetic to the position in which the Government now finds itself, *i.e.*, having to rebut a presumption of prejudice without knowing, book and page, the specific instance of the *ex parte* communication which occurred between Judge Riley and the jury. Moreover, the Court is cognizant that mere speculation is insufficient to shift the burden to the Government. *See United States v. Davis*, 15 F.3d 1393, 1412 (7th Cir.1994)(holding that "[a] defendant's mere allegations of taint or his unsubstantiated suspicions do not necessitate inquiry by the court.").

However, Agay stated that Judge Riley entered the jury room in three of the four cases assigned to him as a law clerk, one of which was the instant case. Agay also stated that Judge Riley would, on occasion, enter the jury room and would answer jury questions of which he was unaware. The Court believes that Agay's statements, the evidence that Judge Riley frequently entered the jury room during deliberations, and Judge Riley's improper response to the jury's questions when considered in sum are sufficient to support a finding by a preponderance of the evidence that Judge Riley had an *ex parte* communication(s) with the jury in this case. *Caro–Quintero*, 769 F.Supp. at 1580. In making this finding, the Court is attentive to the Seventh Circuit's opinion in *United States v. Touloumis*, 771 F.2d 235 (7th Cir.1985), in which that court opined:

> notwithstanding the presence of a court reporter, a judge should not engage in a discussion with the jury in the jury room regarding the issues presented in the case after the jury has begun its deliberations. We noted that two important interests are undermined by such discourse between the judge and the jury

during the jury's deliberations: (1) the appearance of justice, and (2) allowing the parties to make a contemporaneous record as to the context in which the judge's remarks are made.

*Id.* at 242, citing *United States v. Burns*, 683 F.2d 1056, 1058 (7th Cir.1982). This Court is thoroughly convinced that any finding other than that Judge Riley engaged in *ex parte* communications with the jury in the above-captioned case would forever taint Bradley's conviction and would do a disservice to the appearance of justice. *Id.*

Having determined that an improper contact occurred between Judge Riley and the jury, the burden shifts to the Government to prove that the contact was harmless to Bradley. *Remmer*, 347 U.S. at 229, 74 S.Ct. 450. The Court finds that the Government has not met this burden.

■ The Government's burden in this regard is a "heavy" one. *Id.; Schaff v. Snyder*, 190 F.3d 513, 533–34 (7th Cir. 1999). The Government must demonstrate "that there exists no 'reasonable possibility that the jury's verdict was influenced by an improper communication.'" *United States v. Cheek*, 94 F.3d 136, 141 (4th Cir.1996), quoting *Stephens v. South Atl. Canners, Inc.*, 848 F.2d 484, 488–89 (4th Cir.1988); *see United States v. Carter*, 973 F.2d 1509, 1515 (10th Cir.1992), quoting *United States v. de Hernandez*, 745 F.2d 1305, 1310 (10th Cir.1984)(holding that in order "[t]o avoid a new trial under the plain error analysis, the record must completely 'negative[ ] any reasonable possibility of prejudice arising from such error.'").

■ The Court has made a finding of fact that Bradley has made a colorable showing that an *ex parte* communication occurred between Judge Riley and the jury in this cause, and the Government has offered no evidence or argument to rebut the presumption of prejudice or to establish that the improper contact was harmless to Bradley. Therefore, the Court believes that this conduct likely affected the

jury's impartiality. *Owen,* 727 F.2d at 646. This is so because juries tend to view the presiding judge as the embodiment of the law; the jury could have interpreted even an innocuous comment by Judge Riley or his body language (either correctly or incorrectly) as revealing his view of the case, thus influencing its deliberations and/or verdict. At a minimum, the contact(s) tarnished the appearance of justice and deprived the parties of their ability to make a contemporaneous record as to the context in which Judge Riley's remarks to the jury were made. *Touloumis,* 771 F.2d at 242.

■ In short, the Court cannot say, under the circumstances, that there exists no reasonable possibility that the jury's verdict was not influenced by an improper communication. *Cheek,* 94 F.3d at 141. A criminal defendant has a right to a fair trial, U.S. CONST. amend. VI, and a right to be present at every stage of the trial. Fed. R.Crim. Pro. 43(a); *see United States v. Coffman,* 94 F.3d 330, 335–36 (7th Cir.1996)(holding that "[t]he defendant is entitled to be present at all stages of his trial, ... and a judge's response to a note from the jury is one of those stages."); *see also United States v. Pressley,* 100 F.3d 57, 59–60 (7th Cir.1996)(holding that Rule 43(a)entitles a defendant to be present at all stages of his trial and that "[c]ommunication between the judge and the jury, or a single juror, is one of those stages."). Judge Riley's *ex parte* communication(s) with the jury deprived Bradley of both of these rights, and therefore, he is entitled to a new trial.[11]

*Ergo,* Defendant's Motion for a New Trial is ALLOWED.[12]

---

11. The Court has jurisdiction to grant Bradley's motion for a new trial despite the fact that his petition for rehearing is currently pending before the Seventh Circuit. Fed. R.Crim. Pro. 33; *United States v. Ellison,* 557 F.2d 128, 131–32 (7th Cir.1977); *United States v. Siviglia,* 686 F.2d 832, 835–36 (10th Cir.1981).

12. In addition to disposing of Defendant's motion for a new trial, this Opinion constitutes the Court's "findings" as directed by the Seventh Circuit in that court's remand.