**UNITED STATES of America, Plaintiff,**

v.

**Charles W. DAVIS, Defendant.**

**No. 99–30023.**

United States District Court, S.D. Illinois, East St. Louis Division.

Aug. 28, 2000.

---

Norman R. Smith, Fairview Heights, IL, Patty Merkamp Stemler, Washington, DC, for plaintiff.

Phillip J. Kavanaugh, III, East St. Louis, MO, for defendant.

## OPINION

RICHARD MILLS, District Judge.

Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by "impartial" jurors, and an outcome affected by extrajudicial statements would violate that fundamental right.

*Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1075, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991).

## I. BACKGROUND

On December 13, 1999, a jury found Charles W. Davis guilty of all of the Counts charged in the indictment filed against him.[1] On May 28, 1999, United States District Judge Paul E. Riley sentenced Davis to 417 months of imprisonment.[2] This term of imprisonment consisted of concurrent terms of 57 months on Counts I and IV through XII and a term of 360 months on Count III which was to run consecutively to the term imposed in

---

**1.** Count I charged Davis with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d); Counts II and III charged him with using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c); Counts IV, V, and VI charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g); and Counts VII through XII charged him with possession of unregistered destructive devices

(*i.e.,* pipe bombs) in violation of 26 U.S.C. § 5861(d).

**2.** In addition to sentencing Davis, Judge Riley presided over Davis' trial. Judge Riley is no longer an active district judge due to a medical disability which renders him unable to efficiently discharge the duties of his office.

Count I. Judge Riley did not impose any sentence on Count II.

On October 15, 1999, Davis filed a timely notice of appeal of his convictions and sentence. While his appeal was pending before the United States Court of Appeals for the Seventh Circuit, Davis' counsel received notification from Chief United States District Judge J. Phil Gilbert that Judge Riley may have had *ex parte* communications with the jury during its deliberations in Davis' case. Based upon a motion by Davis' attorney, the Seventh Circuit issued a general remand to the district court for further proceedings based upon the information subsequently learned regarding Judge Riley's conduct during the trial.

Davis has now filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.[3] Therein, Davis argues that, because he was unaware of the *ex parte* communications until after the jury had reached its verdicts, Judge Riley's *ex parte* communications with the jury constitute newly discovered evidence entitling him to a new trial. Davis cites to three instances in which Judge Riley had *ex parte* communications with the jury which he believes entitles him to a new trial pursuant to Rule 33.

On the *first* occasion, Judge Riley informed Davis and counsel that they would be excused from the courtroom while the jurors viewed the firearms and ammunition marked as exhibits in the case but that he would remain. According to her affidavit, Sheila Hunsicker also remained in the courtroom while the jury viewed the evidence.[4] Hunsicker testified that while the jury was viewing the exhibits, she observed and heard Judge Riley questioning the jury regarding whether Davis could have concealed all of the weapons under his trench coat while he robbed the bank.

The *second* occasion occurred while the jury was deliberating. During the jury's deliberations, the foreman sent three notes to Judge Riley.[5] However, Judge Riley made Davis and counsel aware of only one of the notes from the jury. In addition, he responded to the jury's inquiries without first consulting Davis or counsel.

The *third* occasion occurred when the jury reconvened on Monday, December 14, 1998, to deliberate. On that morning, Judge Riley was observed speaking with some of the jurors as they arrived to begin their deliberations for that day.[6]

Davis argues that these three instances of *ex parte* communications between Judge Riley and the jury deprived him of his Sixth Amendment right to a fair trial and of his right pursuant to Federal Rule of Criminal Procedure 43(a) to be present at every stage of his trial. Furthermore, Davis contends that the Government cannot overcome its burden of showing that Judge Riley's contacts with the jury were harmless. Accordingly, Davis asks the Court to grant him a new trial.

The Government argues that only one of the three referenced incidents deserves discussion. As for the two undisclosed notes, the Government claims that they do not constitute newly discovered evidence.

---

3. Chief Judge Gilbert assigned the above-captioned case to this Court-along with six other criminal cases in which Judge Riley allegedly had *ex parte* communications with the juries-after all of the district judges in the United States District Court for the Southern District of Illinois recused themselves.

4. Hunsicker was Judge Riley's permanent law clerk and was the law clerk assigned to Davis' case.

5. The first note requested a magnifying glass which Judge Riley supplied. The second note asked "[w]hich dangerous devices are included in which count[?]" Judge Riley responded: "Please re-read the instructions. The instructions contain the answer which you are seeking." The third note informed Judge Riley that the jury wished to return on Monday to continue their deliberations. Judge Riley did not submit a written response to this note.

6. Davis also relies upon the evidence that Judge Riley had *ex parte* communications with juries in six other cases in support of his motion for a new trial.

**994**

The Government asserts that Judge Riley eventually made Davis and counsel aware of the two notes and that neither Davis nor his attorney objected to the manner in which Judge Riley responded to the jury's inquiries. Thus, the Government argues that Davis has waived his objection to these notes.

As for the incident regarding Judge Riley's conversations with the jurors on Monday, December 14, 1998, the Government argues that Davis' allegation is unfounded and that he has failed to tender any support for his claim. The Government asserts that all of the affidavits filed with this Court reveal that, although Judge Riley often spoke with jurors, the conversations dealt with mundane subject matters such as the weather, not the substance of the cases pending before him. Thus, the Government contends that Davis has failed to meet his burden of establishing that an *ex parte* communication occurred between Judge Riley and the jury on Monday, December 14, 1998.

However, as for Davis' allegation that Judge Riley made comments to the jury outside the presence of Davis and counsel regarding the firearms and ammunition evidence, the Government asserts that further inquiry must be made in order to determine whether the comments can be considered to be harmless. Accordingly, the Government asks the Court to either conduct an evidentiary hearing or allow the parties to interview the jurors themselves concerning the nature of Judge Riley's *ex parte* contact.

## II. APPLICABLE LAW

Federal Rule of Criminal Procedure 33 provides that "the court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice." *Id.* "Probably the most frequent basis for a Rule 33 motion-and the only one specifically mentioned in the rule-is one 'based on the ground of newly discovered evidence.'" *United States v. Woolfolk*, 197 F.3d 900, 905 (7th Cir.1999), quot-

ing *United States v. Kamel*, 965 F.2d 484, 490 (7th Cir.1992). The United States Court of Appeals for the Seventh Circuit has explained:

> To receive a new trial based on newly discovered evidence, the defendant must demonstrate that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial.

*Woolfolk*, 197 F.3d at 905.

 However, when the basis for a new trial is newly discovered evidence that the trial judge has had improper contact with a juror or jurors, the test is somewhat different because "[a]ny *ex parte* meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities of error." *United States v. United States Gypsum Co.*, 438 U.S. 422, 460, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). As the United States Supreme Court has opined:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954), citing *Mattox v. United States*, 146 U.S. 140, 150, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Moreover, the Seventh Circuit has stated that "the unusual practice of a judge entering the jury room to speak privately with jurors is almost certain to run afoul of a

defendant's right to be present during trial proceedings." [7] *United States v. Smith,* 31 F.3d 469, 471 (7th Cir.1994).

■ Before the Government is put to its burden of showing that an improper contact by an outsider with the jury is harmless, however, a defendant must first establish that an *ex parte* communication occurred. *See Owen v. Duckworth,* 727 F.2d 643, 646 (7th Cir.1984)(holding that the defendant bears the burden of proving outside contact with the jury); *see also United States v. ˙Wilson,* 715 F.2d 1164, 1172 (7th Cir.1983)(holding that while "private communications between jurors and others are presumptively prejudicial[,][t]here can be no prejudice ... in the absence of any such communication."); *see also United States v. Heater,* 63 F.3d 311, 321 (4th Cir.1995)(holding that the defendant bears the initial burden of demonstrating that the improper juror contact occurred, and only if the contact is established must the Government demonstrate absence of prejudice). The moving defendant must meet this burden by a preponderance of the evidence. *United States v. Caro–Quintero,* 769 F.Supp. 1564, 1580 (C.D.Cal.1991); *see also United States v. Tarpley,* 945 F.2d 806, 811 (5th Cir.1991)(holding that the defendant must show that "improper communication of extrinsic information had likely occurred."); *see also United States v. Cousins,* 842 F.2d 1245, 1247 (11th Cir.1988)(holding that a defendant must make a "colorable showing" that an *ex parte* communication occurred).

Furthermore, "[a] determination of jury prejudice is complicated in the federal courts by the proscription against questioning jurors directly about the effect of the outside contact on their deliberations." *Owen,* 727 F.2d at 646. Federal Rule of Evidence 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

*Id.* Thus,

[r]ather than question the jurors directly, a district court must make findings of fact at two separate levels. First, the district court must find the basic, or subsidiary, facts—*e.g.,* the nature, content, and extent of the extra-judicial contact. Based on its findings of subsidiary facts, the district court must then make the ultimate factual determination: whether the contact likely affected the juror's impartiality.

*Owen,* 727 F.2d at 646.

## III. ANALYSIS

■ In the instant case, the Court finds that Davis has met his burden of establishing that an *ex parte* communication likely occurred between Judge Riley and the jury. *Tarpley,* 945 F.2d at 811. Even if the Court were to wholly disregard Davis' allegations regarding Judge Riley's conversation with the jurors as they assembled on December 14, 1998, and the fact that Judge Riley responded to the jury's questions without first consulting

---

**7.** A defendant's right under Federal Rule of Criminal Procedure 43(a) to be present at every stage of his trial is "more far-reaching than the right of presence protected by the Constitution." *United States v. Brown,* 571 F.2d 980, 986 (6th Cir.1978).

Davis and counsel,[8] Davis has satisfied his burden of making a colorable showing of an improper contact based upon Hunsicker's affidavit. *Cousins*, 842 F.2d at 1247.

As noted above, Hunsicker testified in her affidavit that

> [w]hile the jury was viewing the exhibits, Judge Riley questioned whether the Defendant could have concealed all of the weapons under his trench coat. I walked over to Judge Riley and asked him to not talk to the jurors while they were looking at the exhibits. He got mad, pointed toward the door, and indicated that I should leave the courtroom. I left the building.

Hunsicker Affidavit ¶ 3. In addition, during an interview by Chief Judge Gilbert regarding Judge Riley's actions, Hunsicker advised Chief Judge Gilbert that "as the jury was viewing the evidence[,] Judge Riley was going around the table commenting on the evidence while the jury viewed it." Therefore, Davis has offered more than mere speculation in support of his claim that an *ex parte* communication occurred between Judge Riley and the jury. *See United States v. Davis*, 15 F.3d 1393, 1412 (7th Cir.1994)(holding that "[a] defendant's mere allegations of taint or his unsubstantiated suspicions do not necessitate inquiry by the court.").

The Court is not persuaded by Court Security Officer Tony Pona's testimony that he does not recall anything unusual occurring while the jury viewed the firearms and ammunition in this case. Hunsicker's affidavit regarding her version of the events surrounding the jury's viewing of the evidence is much more definite that CSO Pona's testimony on this issue.[9] Thus, the Court does not believe that CSO Pona's testimony is sufficient to negate the

Court's finding of a likelihood that Judge Riley engaged in an *ex parte* communication with the jury in this case.

■ Because the Court has found that an *ex parte* communication likely occurred, a presumption of prejudice to Davis attaches to the improper contact, and the burden shifts to the Government to establish that the contact was harmless. *Remmer*, 347 U.S. at 229, 74 S.Ct. 450. The Court finds that the Government has not met this burden.

■ The Government's burden of overcoming the presumption of prejudice is a "heavy" one. *Id.; Schaff v. Snyder*, 190 F.3d 513, 533–34 (7th Cir.1999). The Government must demonstrate "that there exists no 'reasonable possibility that the jury's verdict was influenced by an improper communication.'" *United States v. Cheek*, 94 F.3d 136, 141 (4th Cir.1996), quoting *Stephens v. South Atl. Canners, Inc.*, 848 F.2d 484, 488–89 (4th Cir.1988); *see United States v. Carter*, 973 F.2d 1509, 1515 (10th Cir.1992), quoting *United States v. de Hernandez*, 745 F.2d 1305, 1310 (10th Cir.1984)(holding that in order "[t]o avoid a new trial under the plain error analysis, the record must completely 'negative[ ] any reasonable possibility of prejudice arising from such error.'").

■ Here, the Court has made a finding of fact that Davis has made a colorable showing that an *ex parte* communication occurred between Judge Riley and the jury in this cause, and the Government has offered no evidence or argument to rebut the presumption of prejudice or to establish that the improper contact was harmless to Davis. Therefore, the Court believes that this conduct likely affected the jury's impartiality. *Owen*, 727 F.2d at 646.

---

**8.** Although Judge Riley's actions in answering the jury's questions may have been harmless, *United States v. Rodriguez*, 67 F.3d 1312, 1316 (7th Cir.1995), it was, nevertheless, error for him to have answered the jury's inquiries without first consulting with Davis and counsel.

**9.** Hunsicker testified definitively that Judge Riley made improper comments to the jury while they viewed the evidence in this case. On the other hand, CSO Pona merely testified that he "do[es] not recall anything unusual happening during the in-court viewing" in this case.

This is so because juries tend to view the presiding judge as the embodiment of the law; the jury could have interpreted even an innocuous comment by Judge Riley or his body language (either correctly or incorrectly) as revealing his view of the case, thus influencing its deliberations and/or verdict. At a minimum, the contact tarnished the appearance of justice and deprived the parties of their ability to make a contemporaneous record as to the context in which Judge Riley's remarks to the jury were made. *United States v. Touloumis,* 771 F.2d 235, 242 (7th Cir.1985)(disapproving "of a trial judge's procedure in entering a jury room, despite agreement by both counsel and the presence of a court reporter, to give a supplemental instruction after the jury had already begun its deliberations" and noting that discourses between a judge and the jury during deliberations undermines the appearance of justice).

In short, the Court cannot say, under the circumstances, that there exists no reasonable possibility that the jury's verdict was not influenced by an improper communication. *Cheek,* 94 F.3d at 141. A criminal defendant has a right to a fair trial, U.S. CONST. amend. VI, and a right to be present at every stage of the trial. Fed. R.Crim. Pro. 43(a); *see United States v. Coffman,* 94 F.3d 330, 335–36 (7th Cir.1996)(holding that "[t]he defendant is entitled to be present at all stages of his trial, ... and a judge's response to a note from the jury is one of those stages."); *see also United States v. Pressley,* 100 F.3d 57, 59–60 (7th Cir.1996) (holding that Rule 43(a)entitles a defendant to be present at all stages of his trial and that "[c]ommunication between the judge and the jury, or a single juror, is one of those stages."). Judge Riley's *ex parte* communication with the jury deprived Davis of both of these rights, and therefore, he is entitled to a new trial.

*Ergo,* Defendant's Motion for a New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure based on Newly Discovered Evidence is ALLOWED.