**UNITED STATES of America,
Plaintiff,**

v.

**Carlan D. HODGES, Defendant.**

**No. 99–40009.**

United States District Court,
S.D. Illinois,
Benton Division.

Aug. 28, 2000.

J. Christopher Moore, Benton, Patty Merkamp Stemler, Vicki S. Marani, Washington, DC, for plaintiff.

Renee E. Schooley, East St. Louis, MO, for defendant.

## OPINION

RICHARD MILLS, District Judge.

The right to a fair and open hearing is one of the rudiments of fair play assured to every litigant by the Federal Constitution as a minimal requirement.

*Railroad Comm'n of California v. Pacific Gas & Elec. Co.*, 302 U.S. 388, 393, 58 S.Ct. 334, 82 L.Ed. 319 (1938).

## I. BACKGROUND

On June 2, 1999, a jury found Carlan D. Hodges guilty of Count I of the indictment which charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and also found him guilty of Count II of the indictment which charged him with receiving stolen firearms in violation of 18 U.S.C. § 922(j) and § 924(a)(2). On October 8, 1999, United States District Judge Paul E. Riley sentenced Hodges to 188 months of imprisonment.[1] This sentence consisted of 120 months for his conviction on Count I of the indictment and 68 months for his conviction on Count II of the indictment, to be served consecutively.[2]

---

1. In addition to sentencing Hodges, Judge Riley presided over Hodges' trial. Judge Riley is no longer an active district judge due to a medical disability which renders him unable to efficiently discharge the duties of his office.

2. Hodges' sentence was also to run concurrent with a state court sentence which he was already serving.

On October 15, 1999, Hodges filed a timely notice of appeal of his convictions and sentence. While his appeal was pending before the United States Court of Appeals for the Seventh Circuit, Hodges' counsel received notification from Chief United States District Judge J. Phil Gilbert that Judge Riley may have had *ex parte* communications with the jury during its deliberations in Hodges' case. Based upon a motion by Hodges' attorney, the Seventh Circuit issued a general remand to the district court for further proceedings based upon the information subsequently learned regarding Judge Riley's conduct during the trial.

Hodges has now filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.[3] Therein, Hodges argues that, because he was unaware of the *ex parte* communications until after the jury had reached its verdicts, Judge Riley's *ex parte* communications with the jury constitute newly discovered evidence entitling him to a new trial.

Furthermore, although he does not cite to a specific instance of an *ex parte* communication between Judge Riley and the jury in his case, Hodges, nevertheless, contends that he is entitled to a new trial because there is a 75% probability that such an *ex parte* communication occurred. Moreover, Hodges asserts that Court Security Officer Glenn Wright's testimony should be discredited by the Court because his statements are contradicted by the affidavits of other court personnel and by his own statements which he had previously made to Chief Judge Gilbert.

Finally, Hodges claims that, because Judge Riley was "in the habit" of engaging in *ex parte* communications with the juries in the trials over which he presided, the Court should rely upon this evidence, pursuant to Federal Rule of Evidence 406, in finding that an improper contact occurred

during his trial. Accordingly, Hodges asks the Court to grant him a new trial.

The Government acknowledges that, if Judge Riley had any improper contact(s) with the jury, it has the burden of overcoming a presumption of prejudice to Hodges. However, the Government argues that no improper contact between Judge Riley and the jury occurred in this case. The Government asserts that before it must establish that an *ex parte* communication was harmless, Hodges must show that an *ex parte* communication actually occurred, something Hodges has not done.

The Government contends that Judge Riley had only two contacts with the jury in this case. Both contacts were in response to questions raised in writing by the jury, and Judge Riley responded to both questions in writing after conferring with counsel and Hodges. Thus, the Government argues that no *ex parte* communication(s) occurred. Likewise, the Government claims that the two communications from the jury cannot form the basis for Hodges' Rule 33 motion because the communications are not "newly discovered evidence" because Judge Riley conferred with counsel and Hodges prior to responding to the jury's questions.

In support of its argument, the Government points to Judge Riley's statement on the record where he directed someone else to deliver his written responses to the jury's questions: "Okay. Here. You can give them [the jury] that." The Government also relies upon the affidavit of CSO Wright who testified that Judge Riley did not enter the jury room at any time during this case. Moreover, although CSO Wright acknowledged that Judge Riley was in the courtroom while the jury viewed the exhibits in this matter, he stated that Judge Riley did not speak with the

---

**3.** Chief Judge Gilbert assigned the above-captioned case to this Court—along with six other criminal cases in which Judge Riley allegedly had *ex parte* communications with the

juries—after all of the district judges in the United States District Court for the Southern District of Illinois recused themselves.

jurors during the viewing.[4]

Finally, the Government relies upon the affidavit of David Agay (Judge Riley's law clerk who was assigned to this case) who testified that he never heard Judge Riley communicate *ex parte* with any juror about the substance of any cases. In short, the Government argues that Hodges has failed to establish any communication between the jury and Judge Riley of which he and his attorney were not aware and approved. Therefore, the Government asks the Court to deny Hodges' motion for a new trial.

## II. APPLICABLE LAW

Federal Rule of Criminal Procedure 33 provides that "the court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice." *Id.* "Probably the most frequent basis for a Rule 33 motion—and the only one specifically mentioned in the rule—is one 'based on the ground of newly discovered evidence.'" *United States v. Woolfolk,* 197 F.3d 900, 905 (7th Cir.1999), quoting *United States v. Kamel,* 965 F.2d 484, 490 (7th Cir.1992). The United States Court of Appeals for the Seventh Circuit has explained:

To receive a new trial based on newly discovered evidence, the defendant must demonstrate that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial.

*Woolfolk,* 197 F.3d at 905.

■ However, when the basis for a new trial is newly discovered evidence that the trial judge has had improper contact with a juror or jurors, the test is somewhat different because "[a]ny *ex parte* meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities of error." *United States v. United States Gypsum Co.,* 438 U.S. 422, 460, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). As the United States Supreme Court has opined:

In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954), citing *Mattox v. United States,* 146 U.S. 140, 150, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Moreover, the Seventh Circuit has stated that "the unusual practice of a judge entering the jury room to speak privately with jurors is almost certain to run afoul of a defendant's right to be present during trial proceedings."[5] *United States v. Smith,* 31 F.3d 469, 471 (7th Cir.1994).

■ Before the Government is put to its burden of showing that an improper contact by an outsider with the jury is harmless, however, a defendant must first establish that an *ex parte* communication occurred. *See Owen v. Duckworth,* 727 F.2d 643, 646 (7th Cir.1984)(holding that the defendant bears the burden of proving outside contact with the jury); *see also United States v. Wilson,* 715 F.2d 1164,

**4.** Judge Riley informed the parties of his intention of remaining in the courtroom without counsel or Hodges being present while the jurors viewed the drugs and guns, and neither party objected.

**5.** A defendant's right under Federal Rule of Criminal Procedure 43(a) to be present at every stage of his trial is "more far-reaching than the right of presence protected by the Constitution." *United States v. Brown,* 571 F.2d 980, 986 (6th Cir.1978).

1172 (7th Cir.1983)(holding that while "private communications between jurors and others are presumptively prejudicial[,][t]here can be no prejudice ... in the absence of any such communication."); *see also United States v. Heater*, 63 F.3d 311, 321 (4th Cir.1995)(holding that the defendant bears the initial burden of demonstrating that the improper juror contact occurred, and only if the contact is established must the Government demonstrate absence of prejudice). The moving defendant must meet this burden by a preponderance of the evidence. *United States v. Caro–Quintero*, 769 F.Supp. 1564, 1580 (C.D.Cal.1991); *see also United States v. Tarpley*, 945 F.2d 806, 811 (5th Cir.1991)(holding that the defendant must show that "improper communication of extrinsic information had likely occurred."); *see also United States v. Cousins*, 842 F.2d 1245, 1247 (11th Cir.1988)(holding that a defendant must make a "colorable showing" that an *ex parte* communication occurred).

Furthermore, "[a] determination of jury prejudice is complicated in the federal courts by the proscription against questioning jurors directly about the effect of the outside contact on their deliberations." *Owen*, 727 F.2d at 646. Federal Rule of Evidence 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of

any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

*Id.* Thus,

[r]ather than question the jurors directly, a district court must make findings of fact at two separate levels. First, the district court must find the basic, or subsidiary, facts—*e.g.*, the nature, content, and extent of the extra-judicial contact. Based on its findings of subsidiary facts, the district court must then make the ultimate factual determination: whether the contact likely affected the juror's impartiality.

*Owen*, 727 F.2d at 646.

### III. ANALYSIS

█ In the instant case, the Court finds that it is more likely than not that Judge Riley had an *ex parte* communication(s) with the jury during Hodges' trial. *Tarpley*, 945 F.2d at 811. During an interview by Chief Judge Gilbert, Agay informed Chief Judge Gilbert that, during his tenure as Judge Riley's law clerk, he assisted Judge Riley in only four trials: *United States v. Bradley*, 98–30149, *United States v. Bishawi*, 97–40044, *United States v. Alexander*, 99–30067, and *United States v. Hodges*, 99–40009. Of those four trials, Agay had a specific recollection that Judge Riley entered the jury room and spoke with the jury while they were deliberating in three of the four cases, although he could not specify in which of the three cases the improper contact had occurred. Moreover, in his affidavit, Agay testified that "[o]n some occasions, I was not present in chambers when the jury sent a note. Sometimes, Judge Riley would receive the note, read it, go into the jury room, and close the door." The Court believes that this testimony is sufficient to find that Hodges has made a colorable showing that an *ex parte* communication occurred.[6] *Cousins*, 842 F.2d at 1247.

---

6. In addition, Agay testified that he "observed    Judge Riley speaking to jurors outside the

The Court is not convinced by CSO Wright's testimony, which is contained within his affidavit, that nothing untoward occurred during Hodges' trial. As Hodges notes, CSO Wright's affidavit is contradicted by the affidavits of other court personnel and by his previous statements which he made to Chief Judge Gilbert. Specifically, CSO Wright initially indicated to Chief Judge Gilbert that he recalled Judge Riley entering the jury room in cases other than the *Von Briggs* case, but he testified in his affidavit that Judge Riley usually did not personally deliver responses to jury inquiries, including the *Alexander, Hodges,* or *United States v. Quilling,* 99-30059, cases.

In addition, CSO Wright testified in his affidavit that nothing unusual happened in the *Quilling* case, but Judge Riley's permanent law clerk, Sheila Hunsicker, and his court reporter, Brenda Osborn, both testified that Judge Riley had *ex parte* communications with the jury in that case.[7] Thus, the Court does not give much credence to CSO Wright's affidavit on this issue.

The Court is mindful of and even sympathetic to the position in which the Government now finds itself, *i.e.,* having to rebut a presumption of prejudice without knowing, book and page, the specific instance of the *ex parte* communication which occurred between Judge Riley and the jury. Furthermore, the Court is cognizant that mere speculation is insufficient to shift the burden to the Government. *See United States v. Davis,* 15 F.3d 1393, 1412 (7th Cir.1994)(holding that "[a] defendant's mere allegations of taint or his unsubstan-

tiated suspicions do not necessitate inquiry by the court.").

However, Agay stated that Judge Riley entered the jury room in three of the four cases assigned to him as a law clerk, one of which was the instant case. The Court believes that Agay's statement, along with the evidence that Judge Riley frequently entered the jury room during deliberations, is sufficient to support a finding by a preponderance of the evidence that Judge Riley had an *ex parte* communication(s) with the jury in this case. *Caro–Quintero,* 769 F.Supp. at 1580. In making this finding, the Court is attentive to the Seventh Circuit's opinion in *United States v. Touloumis,* 771 F.2d 235 (7th Cir.1985), in which that court opined:

> notwithstanding the presence of a court reporter, a judge should not engage in a discussion with the jury in the jury room regarding the issues presented in the case after the jury has begun its deliberations. We noted that two important interests are undermined by such discourse between the judge and the jury during the jury's deliberations: (1) the appearance of justice, and (2) allowing the parties to make a contemporaneous record as to the context in which the judge's remarks are made.

*Id.* at 242, citing *United States v. Burns,* 683 F.2d 1056, 1058 (7th Cir.1982). This Court is thoroughly convinced that any finding other than that Judge Riley engaged in *ex parte* communications with the jury in the above-captioned case would forever taint Hodges' conviction and would do a disservice to the appearance of justice. *Id.*

courtroom on several occasions." Although Agay went on to say that the discussions merely concerned mundane matters such as the weather, given Judge Riley's improprieties with juries in other cases, the Court is concerned that even these, perhaps, innocent contacts with the juries might have had an influence on the juries' partiality despite Agay's statement that he did not see or hear Judge Riley discuss the substances of any case during these contacts. At a minimum, given

the circumstances surrounding these seven cases and Judge Riley's medical condition, it leaves one with the impression that "[s]omething is rotten in the state of Denmark." WILLIAM SHAKESPEARE, HAMLET, act 1, sc. 4.

7. In fact, the Government has conceded that Quilling is entitled to a new trial based upon Judge Riley's *ex parte* communication with the jury.

Having determined that an improper contact occurred between Judge Riley and the jury, the burden shifts to the Government to prove that the contact was harmless to Hodges. *Remmer*, 347 U.S. at 229, 74 S.Ct. 450. The Court finds that the Government has not met this burden.

■ The Government's burden in this regard is a "heavy" one. *Id.; Schaff v. Snyder*, 190 F.3d 513, 533–34 (7th Cir. 1999). The Government must demonstrate "that there exists no 'reasonable possibility that the jury's verdict was influenced by an improper communication.'" *United States v. Cheek*, 94 F.3d 136, 141 (4th Cir.1996), quoting *Stephens v. South Atl. Canners, Inc.*, 848 F.2d 484, 488–89 (4th Cir.1988); *see United States v. Carter*, 973 F.2d 1509, 1515 (10th Cir.1992), quoting *United States v. de Hernandez*, 745 F.2d 1305, 1310 (10th Cir.1984)(holding that in order "[t]o avoid a new trial under the plain error analysis, the record must completely 'negative[ ] any reasonable possibility of prejudice arising from such error.'").

■ The Court has made a finding of fact that Hodges has made a colorable showing that an *ex parte* communication occurred between Judge Riley and the jury in this cause, and the Government has offered no evidence or argument to rebut the presumption of prejudice or to establish that the improper contact was harmless to Hodges. Therefore, the Court believes that Judge Riley's conduct likely affected the jury's impartiality. *Owen*, 727 F.2d at 646. This is so because juries tend to view the presiding judge as the embodiment of the law; the jury could have interpreted even an innocuous comment by Judge Riley or his body language (either correctly or incorrectly) as revealing his view of the case, thus influencing its deliberations and/or verdict. At a minimum, the contact(s) tarnished the appearance of justice and deprived the parties of their ability to make a contemporaneous record as to the context in which Judge Riley's remarks to the jury were made. *Toul-*

*oumis*, 771 F.2d at 242. In short, the Court cannot say, under the circumstances, that there exists no reasonable possibility that the jury's verdict was not influenced by an improper contact with it. *Cheek*, 94 F.3d at 141.

A criminal defendant has a right to a fair trial, U.S. CONST. amend. VI, and a right to be present at every stage of the trial. Fed. R.Crim. Pro. 43(a); *see United States v. Coffman*, 94 F.3d 330, 335–36 (7th Cir.1996)(holding that "[t]he defendant is entitled to be present at all stages of his trial, ... and a judge's response to a note from the jury is one of those stages."); *see also United States v. Pressley*, 100 F.3d 57, 59–60 (7th Cir.1996)(holding that Rule 43(a)entitles a defendant to be present at all stages of his trial and that "[c]ommunication between the judge and the jury, or a single juror, is one of those stages."). Judge Riley's *ex parte* communications with the jury deprived Hodges of both of these rights, and therefore, he is entitled to a new trial.

*Ergo*, Defendant's Motion for a New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure based on Newly Discovered Evidence is ALLOWED.