In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-1110, 01-1111 & 01-1185

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

AHMAD BISHAWI, ADOLPH BRADLEY
and CARLAN D. HODGES,

Defendants-Appellees.

Appeals from the United States District Court
for the Southern District of Illinois.
Nos. 97-40044, 98-30149 & 99-40009-- Richard Mills,/1 Judge.

Argued September 7, 2001--Decided November 14, 2001


  Before BAUER, EASTERBROOK and MANION,
Circuit Judges.

  BAUER, Circuit Judge.  The three
defendants-appellees in this case were
convicted and sentenced following
individual jury trials over which former
District Judge Paul E. Riley presided.
Each of the three appellees appealed
their convictions and/or sentences, and
while these direct appeals were pending,
Judge Riley left the bench. Subsequent to
Judge Riley's retirement, all three
appellees filed motions for new trials
pursuant to Federal Rule of Criminal
Procedure 33, claiming that Judge Riley
engaged in improper ex parte
communications with the juries before
whom their cases were tried. Judge
Richard Mills adjudicated the new trial
motions, granting all of the appellees
new trials without any evidentiary
hearings or oral argument. The appellees'
cases were consolidated for this appeal.
For the following reasons, we VACATE the
granting of appellees' motions for new
trials and REMAND for further proceedings.

I.  Background
  On December 7, 1999, the Chief Judge of
the Southern District of Illinois, J.
Phil Gilbert, sent letters to the
defendants-appellees, by way of their
separate counsel, informing them that
Judge Riley had ex parte contact with

deliberating jurors in each of their cases. The letters did not specify or otherwise identify the nature of the referenced ex parte communications. Judge Gilbert sent these notifications after receiving information regarding ex parte contacts between Judge Riley and certain deliberating juries discovered during the process of reassigning Judge Riley's cases. Lawyers for the appellees as well as government counsel were given files containing the portions of such information relevant to each of their respective cases on January 11, 2000. On the bases of this information, which is summarized below, Judge Mills granted the appellees new trials on August 28, 2000.

A) Ahmad Bishawi

Specific to the Bishawi case, the information file provided by Judge Gilbert included a note from the jury asking to view a particular exhibit, to which Judge Riley replied in longhand that the jury had all exhibits introduced at trial in their possession. Also included was a typewritten note from the court reporter, Brenda Orsborn, and a memorandum to file from Judge Gilbert, both of which indicated that no jury notes were ever made of record with counsel. Lastly, the file contained summaries of interviews conducted by Judge Gilbert with the court security officer, Glenn Wright, and one of Judge Riley's law clerks, David Agay. According to these interview summaries, Mr. Wright and Mr. Agay each recalled that Judge Riley communicated with deliberating juries ex parte, but neither could specify when such communications occurred or what was said.

B) Adolph Bradley

Among the information provided by Judge Gilbert to parties interested in the Bradley case was a jury note, which sought clarifications of particular jury instructions. Typewritten at the bottom of that note was: "Three attached instructions given to the jurors, 12/17/98." Judge Gilbert's file memorandum indicated that after this note was made of record with the attorneys, Judge Riley proceeded to the jury room to speak with the jurors. Beyond the

transcript of this conversation, the only other noteworthy information provided in Bradley were summaries of interviews with Mr. Wright and Mr. Agay that mirrored those contained in the Bishawi file.

### C) Carlan D. Hodges

In Hodges, the file provided by Judge Gilbert included two pages of notes sent by the jury to Judge Riley during deliberations as well as Judge Riley's answers to the same. The record reveals that Judge Riley informed and consulted with all interested parties before having his written responses to these notes delivered to the jury. The Hodges file also included the same summaries of interviews with Mr. Wright and Mr. Agay provided in the Bishawi and Bradley cases.

## II. Discussion

We review the grant of a motion for a new trial under the abuse of discretion standard. United States v. Boyd, 55 F.3d 239, 242 (7th Cir. 1995). However, as the appellant points out, this Court has recognized that application of the defer ential abuse of discretion standard to a successor judge who granted a new trial based upon review of a cold record may not be warranted. Bankcard America, Inc. v. Universal Bankcard Sys., Inc., 203 F.3d 477, 481 (7th Cir. 2000). Indeed, the question of whether a lesser standard of review is proper here was extensively briefed by the parties. Because we find that in these circumstances it was an abuse of discretion to grant defendants-appellees' motions for new trials without evidentiary hearings or any oral argument, we need not engage in a hypothetical discussion regarding the applicability of a lesser standard of review to the decisions of the successor judge who reviewed the records in appellees' cases.

"[T]he mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication." Rushen v.

Spain, 464 U.S. 114, 119 (1983) (Stevens, J., concurring in judgment); see also Verdin v. O'Leary, 972 F.2d 1467, 1481-82 (7th Cir. 1992) (explaining that the con stitutional right to presence is not implicated per se by a judge's ex parte communication with a deliberating jury). Rather, the constitutional right to presence, which derives from the Sixth Amendment's Confrontation Clause and the Due Process Clause of the Fourteenth Amendment, exists where there is a reasonably substantial relation to the fullness of opportunity to defend against the charge and to the extent that a fair and just hearing would be thwarted by the defendant's absence. United States v. Gagnon, 470 U.S. 522, 526 (1985) (citing Snyder v. Massachusetts, 291 U.S. 97, 105-06, 108 (1934)). The broader, procedural right to be present afforded by Federal Rule of Criminal Procedure 43 is likewise not without limits, alleviating the presence requirement when the proceeding involves only a conference or hearing upon a question of law. Fed. R. Crim. P. 43(c)(3); see also United States v. Johnson, 859 F.2d 1289, 1294 (7th Cir. 1988) ("[A] defendant's presence is not required '[a]t a conference or argument upon a question of law.'") (citing Rule 43(c)(3)) (emphasis in original). Moreover, a defendant's absence from any trial proceeding should be considered in light of the entire record. United States v. Moore, 936 F.2d 1508, 1523 (7th Cir. 1991) (citations omitted).

The defendant bears the burden of proving the occurrence of ex parte contact with the jury. Owen v. Duckworth, 727 F.2d 643, 646 (7th Cir. 1984). Once established, determination of whether the ex parte contact violates either the defendant's constitutional or procedural right to presence is subject to a harmless error analysis. See, e.g., Rushen, 464 U.S. at 118-19; Rogers v. United States, 422 U.S. 35, 40 (1975). An error is harmless, and therefore does not mandate reversal and a new trial, unless it affects "substantial rights." Fed. R. Crim. P. 52(a); United States v. Patterson, 23 F.3d 1239, 1255 (7th Cir. 1994). Substantial rights are those that affect the outcome of the case. Patterson, 23 F.3d at 1255. Thus, a right to presence violation entitles the defendant to a new trial only if the ex

parte communication at issue likely affected the jury's verdict. United States v. Pressley, 100 F.3d 57, 60 (7th Cir. 1996).

"In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." Remmer v. United States, 347 U.S. 227, 229 (1954) (emphasis added). The presumption is, of course, not conclusive. Id. The prejudicial effect of an ex parte contact is without question rebuttable by way of showing harmless error. Id.; Rushen, 464 U.S. at 118-19; Rogers, 422 U.S. at 40. Further, a post-trial evidentiary hearing may be proper to determine whether any such contact was merely harmless or in fact prejudicial to the defendant. Remmer, 347 U.S. at 229-30; Rushen, 464 U.S. at 119-20.

Where, as here, the record is void of any specific information regarding the occurrence and nature of, as well as the circumstances surrounding the ex parte contacts, the impact thereof upon the jurors, and whether or not the juries were prejudiced, a hearing in which all interested parties are permitted to participate is not only proper but necessary. Remmer, 347 U.S. at 229-30; Rushen, 464 U.S. at 119-20. The holding of an evidentiary hearing in this case would have afforded the parties an opportunity to interview jurors and determine "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed. R. Evid. 606. Once these factual determinations were made, the trial court would have been equipped to adequately assess the impact of any ex parte contacts on the juries before whom appellees' cases were tried and decide whether or not such communications were harmless error. Remmer, 347 U.S. at 229-30; Rushen, 464 U.S. at 119-20.

A court faced with a post-verdict question of jury prejudice is obligated to ascertain and examine these basic

facts. United States v. Smith, 26 F.3d 739, 759 (7th Cir. 1994) (citing Owen v. Duckworth, 727 F.2d at 647). To hold otherwise would undermine the integrity of the jury process. See United States v. Berry, 64 F.3d 305, 307 (7th Cir. 1995) ("A jury verdict is not lightly to be disturbed through a grant of a motion for a new trial."); Remmer, 347 U.S. at 229-30 ("The integrity of jury proceedings must not be jeopardized by unauthorized invasions."). The trial court abused its discretion in failing to hold such a hearing. Accordingly, we vacate the judgments of the district court granting defendants-appellees' new trial motions and remand with directions to hold an evidentiary hearing to determine what ex parte contact occurred and whether such contact was prejudicial to the appellees.

III.  Conclusion

   The judgments are VACATED and the cases REMANDED for further proceedings consistent with this opinion.

FOOTNOTE

/1 Sitting by designation pursuant to an Order of Chief Judge Posner.