UNITED STATES of America, Plaintiff,

v.

Carlan D. HODGES, Defendant.

No. 99–40009.

United States District Court, S.D. Illinois, Benton Division.

Feb. 20, 2002.

Patty Merkamp Stemler, U.S. Department of Justice, Criminal Div., Appellate Section, Washington, DC, for Plaintiff.

Renee E. Schooley, Asst. Fed. Public Defender, East St. Louis, IL, for Defendant.

## *OPINION*

RICHARD MILLS, District Judge.

The late Paul E. Riley, United States District Judge for the Southern District of Illinois, had a penchant for communicating *ex parte* with jurors in cases in which he was the presiding judge.[1]

Sometimes the communications involved benign subjects such as the weather or televisions programs, but sometimes he commented upon the evidence presented at trial. Such conduct reflects poorly, not only upon the judge who engages in *ex parte* contacts with jurors, but upon the court in which that judge sits and upon the judicial system as a whole.

## I. BACKGROUND

While Carlan D. Hodges' appeal of his convictions and sentence was pending before the United States Court of Appeals for the Seventh Circuit, some information came to light that Judge Riley may have had *ex parte* communications with the jurors during Hodges' trial. Based upon this newly discovered evidence, Hodges filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.[2]

After considering the parties' briefing on the motion, the Court allowed Hodges' motion and granted his request for a new trial. *United States v. Hodges*, 110 F.Supp.2d 768 (S.D.Ill.2000). The Government moved for reconsideration, and after the Court denied its motion, the Government appealed the Court's ruling.

On appeal, the Seventh Circuit vacated and remanded for further proceedings. *United States v. Bishawi*, 272 F.3d 458 (7th Cir.2001). Specifically, the Seventh Circuit opined:

> The holding of an evidentiary hearing in this case would have afforded the parties an opportunity to interview jurors and determine "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed. R.Evid. 606. Once these factual determinations were made, the trial court would have been equipped to adequately assess the impact of any *ex parte* contacts on the juries before whom appellees' cases were tried and decided whether or not such communications were harmless error.... The trial court abused its discretion in failing to hold such a hearing.

1. *E.g., United States v. Hodges*, 110 F.Supp.2d 768 (S.D.Ill.2000); *United States v. Bishawi*, 109 F.Supp.2d 997 (S.D.Ill.2000); *United States v. Bradley*, 109 F.Supp.2d 984 (S.D.Ill. 2000); *United States v. Alexander*, 110 F.Supp.2d 762 (S.D.Ill.2000); *United States v. Quilling*, 109 F.Supp.2d 1009 (S.D.Ill.2000); *United States v. Von Briggs*, 109 F.Supp.2d 1004 (S.D.Ill.2000); *United States v. Davis*, 109 F.Supp.2d 991 (S.D.Ill.2000).

2. The Seventh Circuit issued a general remand to the district court for further proceedings based upon the information subsequently learned regarding Judge Riley's conduct.

*Id.* at 462–63. Accordingly, the Seventh Circuit remanded Hodges' case "to hold an evidentiary hearing to determine what *ex parte* contact occurred and whether such contact was prejudicial to the appellees." *Id.* at 463.

After receiving the mandate, the Court conducted an evidentiary hearing as directed by the Seventh Circuit. At this hearing, the Court heard testimony from the jurors who deliberated and found Hodges guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and guilty of receiving stolen firearms in violation of 18 U.S.C. § 922(j) and § 924(a)(2). In addition, the parties asked the Court to re-evaluate and reconsider the affidavits of court personnel which had been previously submitted to the Court.

Hodges argues that, after hearing the jurors' testimony and reconsidering the affidavits of the court personnel, nothing has changed and that the Court should again allow his motion for a new trial. Hodges contends that the jurors' testimony clearly establishes that Judge Riley had *ex parte* communications with some, if not all, of the jurors in this case. Specifically, Hodges points to the testimony of one juror who recalled that Judge Riley entered the jury room during the jury's deliberations and the testimony of two jurors who testified that Judge Riley was present in the courtroom while the jury viewed the evidence (*i.e.*, the guns).

Furthermore, Hodges asserts that the Court should give him the benefit of the doubt and grant him a new trial based upon the court personnel's affidavits. Specifically, Hodges relies upon David Agay's (*i.e.*, Judge Riley's law clerk) affidavit in which he stated that Judge Riley entered the jury room in three of the four cases to which he was assigned during his tenure with Judge Riley. Hodges argues that, when the Court considers the jurors' testi-

mony along with the court personnel's affidavits and Judge Riley's habit of communicating with jurors, the Court should grant his request for a new trial in order to uphold the integrity of the judicial system and to avoid the appearance of impropriety.

The Government argues that Hodges did not meet his burden of establishing that an *ex parte* communication occurred between the jury and Judge Riley. As for Judge Riley's presence in the courtroom while the jury viewed the guns, the Government notes that no juror testified that Judge Riley said or did anything while they viewed the guns. In any event, the Government contends that Hodges has waived any objection which he might have had to Judge Riley's presence in the courtroom while the jurors viewed the guns.

Moreover, as for the juror who testified that Judge Riley entered the jury room during the deliberations, the Government asserts that he was the only juror who recalled this incident. More importantly, the Government notes that the juror testified that Judge Riley did not say anything while he was in the jury room. Finally, the Government claims that the court personnel's affidavits support the juror's testimony-no improper communication occurred between Judge Riley and any juror in this case. Accordingly, the Government asks the Court to deny Defendant's motion for a new trial.

## II. APPLICABLE LAW

Federal Rule of Criminal Procedure 33 provides that "the court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice." *Id.* The Seventh Circuit has explained:

> To receive a new trial based on newly discovered evidence, the defendant must demonstrate that the evidence (1) came to their knowledge only after trial; (2)

could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *United States v. Woolfolk,* 197 F.3d 900, 905 (7th Cir.1999).

■ However, when the basis for a new trial is newly discovered evidence that the trial judge has had improper contact with a juror or jurors, the test is somewhat different because "[a]ny *ex parte* meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities of error." *United States v. United States Gypsum Co.,* 438 U.S. 422, 460, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). As the United States Supreme Court has opined:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954), citing *Mattox v. United States,* 146 U.S. 140, 150, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Therefore, the Seventh Circuit has stated that "the unusual practice of a judge entering the jury room to speak privately with jurors is almost certain to run afoul of a defendant's right to be present during trial proceedings." *United States v. Smith,* 31 F.3d 469, 471 (7th Cir.1994).

■ Nevertheless, "the mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication." *Rushen v. Spain,* 464 U.S. 114, 119, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)(Stevens, J., concurring in judgment); *see also Verdin v. O'Leary,* 972 F.2d 1467, 1481–82 (7th Cir.1992)(explaining that the constitutional right to presence is not implicated *per se* by a judge's *ex parte* communication with a deliberating jury). "Rather, the constitutional right to presence, which derives from the Sixth Amendment's Confrontation Clause and the Due Process Clause of the Fourteenth Amendment, exists where there is a reasonably substantial relation to the fullness of opportunity to defend against the charge and to the extent that a fair and just hearing would be thwarted by the defendant's absence." *Bishawi,* 272 F.3d at 461–62, citing *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985), and citing *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934).

■ A defendant's broader, procedural right to be present pursuant to Federal Rule of Criminal Procedure 43 is, likewise, not without limits.[3] Rule 43 alleviates the presence requirement when the proceeding involves only a conference or hearing upon a question of law. Fed. R.Crim. Pro. 43(c)(3); *see also United States v. Johnson,* 859 F.2d 1289, 1294 (7th

---

**3.** A defendant's right under Federal Rule of Criminal Procedure 43(a) to be present at every stage of his trial is "more far-reaching than the right of presence protected by the Constitution." *United States v. Brown,* 571 F.2d 980, 986 (6th Cir.1978).

Cir.1988)(holding that "a defendant's presence is not required '[a]t a conference or argument upon a question of law.' "), *quoting* Rule 43(c)(3).

■ The defendant bears the burden of proving the occurrence of an *ex parte* contact with the jury. *See Owen v. Duckworth,* 727 F.2d 643, 646 (7th Cir.1984)(holding that the defendant bears the burden of proving outside contact with the jury); *see also United States v. Wilson,* 715 F.2d 1164, 1172 (7th Cir.1983)(holding that while "private communications between jurors and others are presumptively prejudicial[,][t]here can be no prejudice . . . in the absence of any such communication."); *see also United States v. Heater,* 63 F.3d 311, 321 (4th Cir.1995)(holding that the defendant bears the initial burden of demonstrating that the improper juror contact occurred, and only if the contact is established must the government demonstrate absence of prejudice). The defendant must meet this burden by a preponderance of the evidence. *See United States v. Caro–Quintero,* 769 F.Supp. 1564, 1580 (C.D.Cal.1991)(noting that a defendant must prove that the jury was exposed to *ex parte* contacts with courthouse personnel by a preponderance of the evidence); *see also United States v. Tarpley,* 945 F.2d 806, 811 (5th Cir.1991)(holding that the defendant must show that "improper communication of extrinsic information had likely occurred."); *see also United States v. Cousins,* 842 F.2d 1245, 1247 (11th Cir.1988)(holding that a defendant must make a "colorable showing" that an *ex parte* communication occurred).

■ "Once established, determination of whether the *ex parte* contact violates either the defendant's constitutional or procedural right to presence is subject to a harmless error analysis." *Bishawi,* 272 F.3d at 462, *citing Rushen,* 464 U.S. at 118–19, 104 S.Ct. 453 and *citing Rogers v.*

*United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). An error is harmless and does not mandate reversal and/or a new trial unless it affects "substantial rights." Fed. R.Crim. Pro. 52(a); *United States v. Patterson,* 23 F.3d 1239, 1255 (7th Cir.1994). "Substantial rights are those that affect the outcome of the case." *Bishawi,* 272 F.3d at 462; *Patterson,* 23 F.3d at 1255. Thus, a defendant is entitled to a new trial only if an *ex parte* communication likely affected the jury's verdict. *United States v. Pressley,* 100 F.3d 57, 60 (7th Cir.1996).

■ Finally, a post-trial evidentiary hearing may be proper and necessary in order to determine whether any such contact was merely harmless or in fact prejudicial to the defendant. *Remmer,* 347 U.S. at 229–30, 74 S.Ct. 450; *Rushen,* 464 U.S. at 119–20, 104 S.Ct. 453. A defendant's absence from any trial proceeding should be considered in light of the entire record. *United States v. Moore,* 936 F.2d 1508, 1523 (7th Cir.1991) (citations omitted).

## III. ANALYSIS

In the instant case, the Court finds that Judge Riley had an improper contact with the jury. As for Judge Riley's presence in the courtroom while the jury viewed the evidence, although his presence may not have been prudent, Hodges presented no evidence that Judge Riley said or did anything while in the courtroom; on the contrary, the jurors who testified that they recalled Judge Riley being in the courtroom while they viewed the guns testified that Judge Riley did not do or say anything, let alone say or do anything which would have affected their verdicts.

■ Furthermore, Hodges has waived any objection which he might have had to Judge Riley staying in the courtroom while the jury viewed the guns. At the close of the trial, Judge Riley informed the parties

that he intended to bring the jurors back into the courtroom in order to view the guns:

> THE COURT: Counsel, my thoughts on the exhibits is [*sic*] that they all should go to the jury but for the fact that 1, 2, 3, 4 and 5 are firearms, and we will keep those in the courtroom. We will bring the jurors back into the courtroom to view the firearms, to touch them, to see them, to use them in whatever fashion they deem appropriate. I just simply don't like having firearms in the jury deliberation room.
>
> MR. MOORE: I agree.
>
> MS. SCHOOLEY: That's agreeable.

Accordingly, because Hodges did not object to Judge Riley's proposed course of action, he has waived any objection which he may now have. *See Gagnon*, 470 U.S. at 527–29, 105 S.Ct. 1482(holding that a defendant's failure to invoke his right to be present under Federal Rule of Criminal Procedure 43 at a conference which he knows is taking place between the judge and a juror constitutes a valid waiver of the Rule's right to the present).

■■■ However, one juror specifically testified that he recalled Judge Riley entering the jury room **during the jury's deliberations!** Although the other jurors could not recall this incident (one juror testified that he thought Judge Riley may have entered into the jury room), this juror's testimony regarding Judge Riley's entrance into the jury room was clear and unequivocal. As such, the Court finds that an improper contact between Judge Riley and the jury occurred in this case. *See Smith*, 31 F.3d at 471 (holding that "the unusual practice of a judge entering the jury room to speak privately with jurors is almost certain to run afoul of a defendant's right to be present during trial proceedings.").

Regardless of the reasons why or the justifications for Judge Riley's *ex parte* contact with the jury, the contact was inappropriate and unbecoming a judicial officer. Juries tend to view judges as the embodiment of the law. *See* Monica V. Pennisi, *Simmons v. Conger: The Illusive Nature of Judicial Accountability*, 7 WIDENER J. PUB.L. 177, 178 (1997)(noting that "these feelings of homage have resulted in an inevitable perception of judges as guardians and ultimate embodiments of the law."); *see also* Linwood I. Rogers, Note, *Mireles v. Waco: The Supreme Court Prescribes the Bitter Pill of Judicial Immunity and Summary Reversal*, 26 U. RICH. L.REV. 539, 544 (1992)(noting "the immense responsibility that judges have as the true guardians, oracles, and embodiments of the law."). In fact, the Model Code of Judicial Conduct's Preamble characterizes the judge as the very "symbol of government under the rule of law."

Thus, by engaging in this *ex parte* communication with the jury, Judge Riley provided a disservice to the United States District Court for the Southern District of Illinois, to the legal profession, and to the federal judiciary. More importantly, Judge Riley provided a disservice to Hodges. Regardless of the Court's ruling on his motion for a new trial and the outcome of the Court's ruling on the appeal which will inevitably be filed, Hodges' conviction and sentence will forever be tainted in the minds of some-including Hodges himself.

■■■ Nevertheless, convictions are not to be set aside lightly. *See United States v. Berry*, 64 F.3d 305, 307 (7th Cir.1995)(holding that "[a] jury verdict is not lightly to be disturbed through a grant of a motion for a new trial."); *see also Herrera v. Collins*, 506 U.S. 390, 443, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (Blackmun, J., dissenting and noting that "an otherwise constitutionally valid conviction or sentence should not be set aside lightly."). Again, "[t]he mere occurrence of an

*ex parte* communication between a trial judge and a juror does not constitute a deprivation of any constitutional right." *Rushen,* 464 U.S. at 119, 104 S.Ct. 453. Accordingly, although the Court finds that Judge Riley had an *ex parte* communication with the jurors during Hodges' trial, the Court cannot say that the improper contact affected the outcome of his case.

*First,* the evidence of Hodges' guilt presented by the Government at trial was strong.

*Second,* the evidence presented at the evidentiary hearing revealed that Judge Riley's *ex parte* contact with the jurors was harmless. All that the court personnel's affidavits and the jurors' testimony established was that an *ex parte* communication occurred between the jury and Judge Riley. Hodges presented absolutely **no** evidence that Judge Riley's contact affected his substantial rights, *i.e.,* he has presented no evidence that the contact affected the outcome of the case. Even the juror who testified that Judge Riley entered the jury room during deliberations stated that Judge Riley was only in the jury room briefly (about a minute or as long as it takes to walk into the kitchen to get a soft drink out of the refrigerator), that Judge Riley did not say anything or make any unusual gestures, and that, although he thought it peculiar for Judge Riley to be in the jury room during the deliberations, Judge Riley's presence did not affect the verdict. Likewise, although the affidavits (especially the affidavit of Judge Riley's law clerk David Agay) lend some support to the finding that an *ex parte* communication occurred, nothing in the affidavits indicates that Judge Riley's conduct affected Hodges' substantial rights.

Accordingly, the Court cannot presume prejudice to Hodges from Judge Riley's improper contact with the jury. As the Supreme Court has indicated, the presumption of prejudice is not conclusive. *Remmer,* 347 U.S. at 229, 74 S.Ct. 450. Rather, it is rebuttable if the Government can show that the *ex parte* communication constituted harmless error. *Id.* Here, the Court believes, based upon the evidence presented at the evidentiary hearing, that the Government has shown that Judge Riley's error was harmless to Hodges.

Judge Riley's conduct in this cause is not to be countenanced; his actions reflect adversely upon the integrity of the judicial system. However, because Judge Riley's errors were harmless to Hodges, the Court has no other alternative than to deny Hodges a new trial because he was not denied his Sixth Amendment right to a fair trial, his Fourteenth Amendment due process right, or his right to be present afforded by Federal Rule of Criminal Procedure 43.

*Ergo,* Defendant's Motion for a New Trial is DENIED.